## Elizabeth Burlage v. John G. Burlage.

### Divorce—Extreme cruelty.

1. In this case, on a review of the testimony, the Court changed the decree of the circuit court for a separation from bed and board for two years, to an absolute one from the bonds of matrimony.

2. The statute has authorized the courts, where a case is made out for a permanent separation, to decree an absolute divorce, if it appears proper to do so. This is not done to meet the desire of the parties, but on grounds of public policy, to prevent the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried.

Appeal from Wayne. (Speed, J.) Argued April 8, 1887. Decided April 28, 1887.

Bill for divorce on the ground of cruelty. Defendant appeals from decree for separation for two years. Decree changed to one for absolute divorce. The facts are stated in the opinion.

*W. L. Carpenter*, for complainant.

*William Look* (*Edgar Weeks*, of counsel), for defendant.

CAMPBELL, C. J. Complainant, having filed a bill for a divorce on the ground of cruelty, was awarded a separation from bed and board for two years only, with an allowance annually during that period and no longer. Defendant appeals from that decree.

Under our statutes no such decree can be made except upon testimony which would warrant an absolute divorce. We are bound to suppose the Wayne circuit court was satisfied such a case had been made out. If so, we can only

account for the decree, which is not much, if any, more stringent than an order putting defendant on his good behavior for two years, on the idea that it was supposed defendant, after such a reminder, would mend his ways and treat his wife decently.

The parties are both in early life; the wife being not far from her majority, and defendant some six or seven years older. She is daughter of a market gardener in the outskirts of Detroit, and he is himself a market gardener, who, when he married, lived in the same house with his mother, who owned a part of the land he worked. Complainant found her living in the house, where she continued to live for some time. Some of the family troubles grew out of this relation.

The acts charged included some instances of personal violence, and some of brutality not consisting in assaults, but in abuse and intimidation of the most insulting character. Some acts were not done in view of third persons, but were under circumstances not entirely concealed. The witnesses (except the parties) were examined apart from each other, and complainant was in the main corroborated, so far as the facts were within the knowledge of others. Defendant denied nearly every essential fact, and undertook to give an innocent and sometimes playful meaning to others. But his testimony is full of inconsistencies, and practically confirms complainant's case in its worst features. As it was pointed out in *Briggs v. Briggs*, 20 Mich. 34, the evidence of conduct, the effects of which indicate persistent cruelty, is better corroborated by those effects than by the recitals of witnesses.

It is not disputed that, if complainant and her witnesses tell the truth, the case is a very aggravated one. It would do no good to go at large into the unpleasant details, but one or two samples indicate the difference in swearing. The earliest serious violence sworn to was quite soon after marriage, when

65 MICH.—40.

complainant and others were gathering berries. She appears, in what was evidently a young wife's playfulness, to have reached over from her row to his, and picked some of his best berries. He either pushed her over playfully, as he says, or struck her angrily, and threw her down by the blow, as she says. It is shown very plainly that he went off in a fit of sullen anger, and did not come to the house till evening; that he then displayed such ugliness as terrified complainant, who the next morning took refuge with her own mother, and remained away several days, until defendant induced her to come back by admitting his fault and pledging himself to do better. But these departures occurred more than once, and always as the result of cruelty. The severest instance of violence occurred by his pounding her in bed with his fists very savagely, so that her crying attracted the notice of a young man employed on the place, whose room was on another floor. Defendant undertook to deny any violence, but admitted that she was crying a long time, which he says was without provocation, and because she loved to cry. He has similar absurd explanations of other transactions. He practically admits that he purposely terrified her by exhibiting a revolver on several occasions, firing or threatening to fire it, but not with any murderous purpose. It appears that before she left him she had lost her health, and become cowed and broken in spirit, and showed all the signs of having gone through such an experience as she describes, and suffering both bodily and mentally.

The record indicates that he is one of those ugly dispositioned persons, of sullen and malignant temper, who indulge in the habitual exercise of wanton malice at the expense of those whom they can bully and abuse. It is evident that complainant, with no such conduct on her own part as could palliate it, was subjected to this wickedness until it was impossible to endure it. No one can read the record without being convinced that it would not be safe for her to live with

him. If she had appealed, we could not hesitate to grant an absolute divorce. There is, we think, no reason to believe that he would be less tyrannical or brutal than before, and there is every probability that it would endanger her life, as it certainly would her health and peace, to be compelled to return to him.

The statute has authorized the courts, where a case is made out for a permanent separation, to decree an absolute divorce, if it appears proper to do so. This is not done to meet the desire of the parties, but on grounds of public policy, to prevent the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried. If they have scruples about remarriage, there is nothing to prevent their continuing single as long as they choose. But when the conduct of the party complained of has broken up the marriage relation, and made it impossible to continue it, the law authorizes the courts to annul it.

We think this is such a case, and that defendant ought not to continue in the relation of complainant's husband. We shall therefore so change the decree as to make the divorce an absolute one from the bonds of matrimony. As no permanent alimony is provided for in the decree, the case must be sent back, so that the circuit court may inquire into the property of defendant, and decree such alimony as may be suited to his means. The allowance should be of some definite amount in gross, and not in the shape of an annuity, but the time and terms of payment to be arranged as shall be found just, always keeping within the statutory rules; defendant to pay all costs, and a further allowance of $200 on the appeal.

The other Justices concurred.