ROBERTS v. ROBERTS.—125 S. W. (2d) 199.

Western Section. Oct. 22, 1938.

Petition for Certiorari Denied by Supreme Court, Feb. 18, 1939.

652

Robert W. Adams, of Trenton, for appellant.
James D. Senter, Jr., of Humboldt, for appellee.

ANDERSON, J. By her original bill in this cause, the complainant, Mrs. Will L. Roberts, sought an absolute divorce from the defendant, and alimony, on the sole ground that the defendant had deserted and abandoned her in November, 1937, and since that time had failed and neglected to provide for her. By answer the defendant denied the material allegations of the bill and by a cross-bill himself sought a divorce on the grounds of cruel and inhuman treatment. Upon the hearing, the chancellor dismissed both the original bill and the cross-bill. After he had indicated that this would be the disposition of the case, the complainant moved the court that she be

allowed separate maintenance and support. The chancellor likewise denied this relief. The complainant, alone, appealed.

■ It may be stated at the outset that by far the greater portion of this record consists of evidence pro and con upon the question of how much whiskey the defendant drank, whether he had been associating with lewd women and whether he was civil in his conduct toward the complainant. With the question of whether this evidence showed an independent ground or grounds for divorce we are not concerned for the reason that the sole ground relied upon in the bill is abandonment and failure to provide.

The complainant and defendant were married in 1922 and, with the exception of about 6 months, lived in the town of Humboldt. The defendant is a building contractor and, prior to the economic depression, was apparently successful from a financial standpoint, and provided well for his family. Since 1930 and 1931, he, in common with a multitude of others, especially those engaged in the building trades, has had an increasingly difficult time of making a go of it financially. In 1934 he lost his home through a mortgage foreclosure and he and the defendant rented rooms in the home of the complainant's mother with the understanding that they would pay rent if they were able to do so. It is clear that the defendant was in greatly reduced financial circumstances, that his income was meagre and uncertain, and because of this fact he was unable to maintain the style and manner of living that he had maintained in his more prosperous days. It is also conceded that he drank to some extent, the complainant says to excess which the defendant denies, and that this combination of circumstances, together with the fact that the defendant was frequently away from home at night, was the cause of considerable discord between the parties. In November, 1937, the defendant took up his abode with his mother. The complainant testified that he had paid no rent to her mother for a year prior to that time and that he stated when he left, that ''I am going where I won't have to pay rent,'' referring to his mother's. He did not take his trunk with him at that time. The defendant testified that after a quarrel about their financial situation he told the complainant that he was going to his mother's and ''stay until I can get the money and come back and live like somebody;'' and that he returned to his wife's room every evening for about a week and read his paper; that the last time he was there the complainant told him that her mother had an opportunity to rent the rooms and that if he was going to continue to stay at his mother's the rooms would be rented, to which he replied, ''Just go ahead, I don't know when I will get back, I haven't got the money yet;'' that 2 or 3 days thereafter she sent his trunk and a hand grip containing some of his belongings to him at his mother's. He further testified that he never instructed

any merchants not to extend credit to his wife, but upon the other hand, told the groceryman, who asked him about the matter, to continue extending credit to her; that the coal bill had not been paid because he had no money to pay it with. He further testified that when he went to his mother's home he did not intend to abandon or leave the complainant permanently, but only temporarily, "until he could make better arrangements," meaning, until he could make enough money to support her, and there is no evidence even tending to indicate the contrary.

Although he has not been living with her so far as appears, defendant has provided for complainant as far as his means would permit and intends to continue to do so. That is all that was required of him, even though the provision made was inadequate for the wife's support.

Under these circumstances, we think it too clear for elaboration that the Chancellor was entirely correct in holding that the complainant had failed altogether to make out a case for a divorce on the only ground charged in her bill. Compare Saillard v. Saillard, 2 Tenn. Chy. App., 396; E. W. M. v. J. C. M., 2 Tenn. Chy. App., 463; Russell v. Russell, 3 Tenn. App., 232.

Error is assigned on the action of the Chancellor in refusing to award the complainant separate maintenance and support. She charged in her bill that the defendant had no property of any substantial value, owning a small vacant lot and a badly worn automobile only. The proof fully supports this averment. The lot appears to be owned by the complainant and the defendant as tenants by the entireties and to be worth between $400 and $500. The bill does not proceed upon the theory that the alimony should be awarded out of defendant's interest in this lot, but upon the theory that the defendant is an able-bodied man with an earning capacity, and that she is entitled to a decree directing him to pay her at least $40 per month by way of separate maintenance.

Her need of this amount is not debatable and the argument seems to be that since it is the duty of the husband to support the wife, the need of the wife warrants the decree sought, even though it does not appear reasonably probable that at present defendant could pay that amount.

The right of a wife to separate maintenance is founded on the duty of the husband arising out of the marital relation to support the wife. She may have it awarded in a divorce proceeding under the prayer for general relief even though a divorce be denied her. Cf. Lingner v. Lingner, 165 Tenn., 525, 56 S. W. (2d), 749.

But it is a mistake to suppose that the circumstances and needs of the wife, however distressed her situation, can alone be regarded as requiring an award of separate maintenance. She is

entitled to demand and receive from her husband as a matter of right only such support as he is reasonably able to furnish from his property or earnings. She is not entitled to an award for that purpose in any and all events.

"We can easily imagine cases," say our Supreme Court, "in which the husband ought not or cannot be made to pay alimony." Williams v. Williams, 146 Tenn., 38, 45, 236 S. W., 938, 940.

This, we have no doubt, is equally true with respect to separate maintenance.

 As stated, it is contended here that the defendant has an earning capacity upon which the award should be¹ fastened. The showing, as here made in that regard, is not sufficient to warrant the relief. Where the husband has no estate before an award for separate maintenance in the form of periodical payments is made, it ought to appear not only that the husband has a potential earning capacity but that there is a reasonable prospect of his having an opportunity to utilize it. He ought never to be burdened with periodical payments and the concomitant menace of contempt proceedings unless the court is satisfied either that he has the means to comply with the decree or the capacity to acquire the means if he makes a reasonable effort to do so.

 It is fairly apparent in this case that the defendant did at one time have a profitable business as a building contractor and he no doubt still has the capacity to earn money in that business if he should have an opportunity to employ his talents. But we find no evidence that would justify the conclusion that there is any immediate prospect of his earning in the near future any more than he now earns and so far as the record discloses he is now providing for his wife as far as his means will permit and has no intention of doing otherwise. No more can be required of him, even though the necessities of the wife are not fully met.

It is reasonably certain that the defendant's straitened financial condition is the dominant cause of the domestic troubles disclosed in this case. So far as it appears this financial situation is due to no fault of the defendant. It is manifestly a matter of considerable concern to the complainant. We think it could not be conducive to a solution of the difficulties with which these parties are confronted or to the welfare of society to wrap around this defendant a money decree for separate maintenance and thus hang over his head the continuing menace of repeated contempt proceedings.

We are not unmindful of the hardship which has come upon the complainant. Her situation is unfortunate and calculated to arouse a natural sympathy but it furnishes no basis for the legal relief she seeks. It must be regarded as the result of chance that is more or less inherent in every marriage.

Under the facts of this case we are satisfied that in leaving these parties where he found them the chancellor adopted the wisest course and the one that is in accord with sound public policy. It is perhaps needless to point out that the marital obligation of the defendant to support the complainant according to his means has been and is in no wise impaired.

Let the decree be affirmed at the cost of the defendant.

Ketchum, J., concurs.

Senter, J., did not participate in the decision of this case.