THURMON B. GREENE, Appellant, v. ROSE C. GREENE, Appellee.—349 S. W. (2d) 186.

Western Section. July 26, 1960.

Certiorari Denied by Supreme Court October 7, 1960.

Thomas C. Rhem, Clyde West, Memphis, for appellant.

Younger & Dann, Memphis, for Poston Cox, Divorce Proctor.

CARNEY, J. This is the second time this case has been before this court. Upon the first trial the Chancellor dismissed the complainant's original bill on the grounds that he was not a bona fide citizen and resident of Shelby

County, Tennessee, and for the further reason that he had not proven sufficient grounds for a divorce.

In an opinion by Judge Bejach on June 21, 1957, published under the style Greene v. Greene, 43 Tenn. App. 411, 309 S. W. (2d) 403, this court reversed the Chancellor and held that the complainant below, Thurmon B. Greene, had established that he was a citizen and resident of Shelby County, Tennessee, and entitled to bring suit for divorce in the Chancery Court of Shelby County, Tennessee. However, the case was remanded under the authority of T.C.A. sec. 27-329 for further proof relating to the complainant's grounds for divorce.

On the second trial complainant introduced the deposition of his daughter, Mrs. Juanita Livingston, as additional proof. The defense introduced the deposition of the defendant wife. The Chancellor again refused to grant the complainant a divorce and dismissed his bill. From this decree the complainant has brought the present appeal to this court.

Complainant, aged 53, and the defendant, aged 45, were married in Waukegan, Illinois, October 2, 1948, and they have one child, Rose Marie Greene, aged 9, who is in the custody of her mother. During the fall of 1949 the complainant became hospitalized and entered a veterans hospital in Milwaukee, Wisconsin. It developed that he has a chronic and probably incurable case of tuberculosis.

Sometime about 1951 the complainant asked for and obtained a transfer to the Veterans Hospital in Memphis, Tennessee. The complainant is a native of McCrory, Arkansas, and has a number of friends and relatives living in or near Memphis, Tennessee. Since that time the complainant has been a patient at the Veterans Hos-

pital in Memphis, Tennessee. However, he is ambulatory and goes in and out of the hospital very much as he wishes.

From May, 1955, until August, 1958, he attended a G. I. watchmakers school in Peoria, Illinois, but the condition of his health deteriorated to such an extent that he was never able to ply his trade. Complainant is classified as 100% disabled by the Veterans Administration and receives $156.25 monthly. The defendant wife receives $89 per month from the Veterans Administration for the support of herself and their child. Complainant has no income except his compensation payments.

The parties separated sometime about January, 1951, in Milwaukee, Wisconsin, and have not lived together since that time.

The complainant testified that after he came to Memphis he entreated his wife to come to Memphis to live with him and that he provided a room for her with a cousin. He was corroborated by the testimony of his cousin who said that she participated in the telephone call to the defendant wife asking her to come to Memphis and offering her a place to live.

The defendant wife admits that she has never been to Memphis to see the complainant but states as a reason therefor that the complainant has never sent her any money on which to come to Memphis and that in substance he has never in good faith entreated her to come to Memphis or provided her with a place to live in Memphis. She admits in her deposition that she did receive the phone call mentioned by her husband and that even though the cousin did offer her a place to live that as a matter of fact his cousin had no place for her to live.

The defendant further testified that while she and the complainant were living together he supported her and the child but that after he left her he never sent her any money; and that in June, 1952, she applied for and has received continuously since that time directly from the Veterans Administration the sum of $89 per month for herself and daughter as a share of her husband's disability check.

Further she testified that in July, 1952, her husband came to Milwaukee to attend the marriage of his daughter by a former marriage; that she saw him; that they were reconciled; had sexual relations and he agreed to come back in two weeks to see her but never did come back. Further she testified that in December, 1952, she received a telegram from her husband asking her to meet him at a certain hotel in Milwaukee which she did but that he was so intoxicated that she could not talk or reason with him. She receives a small amount each month from the County Welfare Department of her county in Wisconsin.

Mrs. Juanita Livingston, the daughter of Mr. Greene by a former marriage, testified that she was living with her mother in Milwaukee when the complainant and defendant were living together in 1950; that she was 16 years of age at the time; that she heard the defendant wife tell her father that she did not intend to live with him in Racine, Wisconsin, and that she did not intend to live with him in Milwaukee, Wisconsin. This occasion was sometime in late 1950 or early 1951.

■ ■ This court, of course, tries a divorce case on appeal de novo with a presumption of correctness of the decree of the court below. Unless the evidence pre-

ponderates against the finding of the court below then we must affirm. T.C.A. sec. 27-303.

The complainant relies upon three separate grounds of divorce:

(1) Willful and malicious desertion, without reasonable cause, for two whole years. T.C.A. sec. 36-801(4).

(2) Refusal on the part of the defendant to remove with her husband to this state without a reasonable cause, and willfully absenting herself from him for two years. T.C.A. sec. 36-801(8).

(3) That the defendant wife has been guilty of such cruel and inhuman treatment or conduct towards her husband as renders cohabitation unsafe and improper. T.C.A. sec. 36-802(1).

On the question of desertion the complainant contended and testified that the defendant wife locked him out of their apartment back about 1950 in Milwaukee, Wisconsin; that she is afraid of him because of his tuberculosis. He is vaguely corroborated in this testimony by the testimony of his daughter, Mrs. Livingston.

With reference to the failure of the defendant to remove to this state without a reasonable cause the complainant seeks to prove this allegation by his testimony that on one isolated instance several years ago he called his wife by telephone and asked her to come down to Memphis. He is corroborated by his cousin, Mrs. Virgie Leach, in her testimony upon the first trial that she took part in the conversation and invited the defendant to come.

The uncontradicted proof is that during the entire time the parties have been separated the complainant

642

has never sent the defendant wife a single dollar out of his monthly income of $156.25 for the support of either herself or their minor child. During the many months he spent in Peoria, Illinois, attending watchmakers school he made no effort to visit the defendant and their daughter and made no effort to have them visit him though they were not too far distant in Wisconsin.

We might add that from our reading of the entire record in this cause we find the situation between these parties to be most unfortunate. The defendant's actions indicate very little if any present love on her part for the complainant and we are of opinion that she has contested this divorce primarily to continue receiving the $89 per month from the Veterans Administration. We are also of opinion that there is no hope of future reconciliation between the parties or that they will ever live together again.

However, the burden is upon the complainant to prove by a preponderance of evidence his grounds for divorce as provided by statute. The Chancellor did not believe his testimony that the defendant deserted him without reasonable cause and did not believe his testimony that he made a bona fide effort to get her to move to Memphis to be near him in the hospital. Certainly under the meager proof in this record we cannot say that the evidence preponderates against the finding of the Chancellor.

With reference to the allegation of cruel and inhuman treatment we concur in the finding of the Chancellor that none was proven. The swearing out of the warrant by the defendant against her husband, the complainant, in Milwaukee back about 1950 is certainly not

shown in the record to have been without any cause. Likewise, the swearing out of the warrant in 1955 against the complainant on charges of bigamy after he had entered into the marriage in Hernando, Mississippi, with Mrs. Baty did not constitute cruel and inhuman treatment since it is not denied that he did actually go through the ceremony with this woman.

In conclusion we wish to observe that certainly we are sympathetic with this unfortunate complainant who is totally disabled from tuberculosis and we agree with his solicitors that society will not be benefitted by enforcing celibacy upon this complainant who is married and yet really unmarried as suggested in Lingner v. Lingner, 1933, 165 Tenn. 525, 56 S. W. (2d) 749. However, to some extent the complainant is the author of at least a part of his misfortune.

If our statutes authorized it, the writer of this opinion would be disposed to grant the parties a divorce and require the complainant to pay a reasonable amount out of his compensation check each month for the support of the defendant and their minor child. We know of no authority for such action and therefore we must somewhat reluctantly affirm the action of the Chancellor and dismiss the complainant's bill at his cost.

The appellant's motion to strike as surplusage the first 72 pages of the transcript and disallow the costs thereof is granted. This surplusage consists of 41 pages from the transcript of the former record in this cause filed in this court on April 3, 1957, and 31 pages from the opinion of this court filed June 21, 1957, remanding the cause.

T.C.A. sec. 27-330 provides as follows:

"27-330. Transcript on subsequent appeal.—If a cause be remanded, upon being brought up again for correction of errors, the transcript of the record previously sent up shall, together with the transcript of the subsequent proceedings in the court below, constitute a full record. [Code 1858, sec. 3171 (deriv. Acts 1857-1858, ch. 6, sec. 1); Shan., sec. 4906; Code 1932, sec. 9055.]"

See also Gibson's Suits in Chancery, 4th Edition, Section 1281, paragraph 13.

There is nothing in the record to indicate that complainant's solicitors had any knowledge that the Clerk planned to include these portions of the former record in the present transcript. Under all the circumstances of this case we think the surplusage should be stricken and the costs of the Clerk and Master for transcribing these 72 pages should be disallowed.

Avery, P. J. (W.S.), and Bejach, J., concur.