*In re* MARRIAGE OF GEORGE A. BATES, Petitioner-Appellant and Cross-Appellee, and MARY LUISE BATES, Respondent-Appellee and Cross-Appellant.

Second District   No. 84—0795

Opinion filed March 14, 1986.

568

Robert M. Ward, of Cook, Wetzel & Egan, of Chicago, for appellant.

Narusis & Narusis, of Cary, and Jerome Marvin Kaplan, of Chicago, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

Petitioner and cross-respondent, George A. Bates (petitioner), brought this action for dissolution of marriage in the circuit court of McHenry County on April 30, 1980, alleging grounds of mental cruelty. Respondent and cross-petitioner, Mary Luise Bates (respondent), denied petitioner's allegations of mental cruelty and counterpetitioned for a legal separation. On October 28, 1982, the trial court denied petitioner's petition for dissolution of marriage. On February 25, 1983, the court granted respondent's cross-petition for legal separation and entered its final judgment on June 1, 1984, awarding respondent separate maintenance. After post-trial motions by both parties were denied, petitioner filed his notice of appeal on August 24, 1984, and respondent cross-appealed on August 27, 1984.

Petitioner was born on March 8, 1904. He is an investment counselor and has spent the majority of his efforts managing his own extensive properties as well as running the Chalet Golf Course located outside Cary. The golf course adjoins property known as Lakefield Farm where petitioner resides. Petitioner has one surviving child, Connie. Respondent was born on August 27, 1936. She is a registered nurse, but did not work during the marriage. Respondent has four children from a prior marriage: Susan (26), Scott (24), Katheryn (21), and Nancy (16), all of whom petitioner adopted. Custody was not an issue in the trial court, as petitioner did not request custody or visitation of the one remaining minor.

The parties were married on January 24, 1976. Petitioner moved out of the main residence of the estate on or about February 6, 1979, and into a second house also located on the property. He then filed this action on April 30, 1980, alleging grounds of mental cruelty. The temporary proceedings were tried piecemeal and concluded in a temporary order of support entered on December 19, 1980. Further, during the course of the trial proceedings numerous disputes arose between the parties regarding discovery, possession of petitioner's extensive art holdings, and the court's support orders. After separate hearings on the merits, the court denied petitioner's petition for dissolution and granted respondent's petition for legal separation.

On June 1, 1984, the court entered its final judgment, awarding respondent separate maintenance and resolving the remaining issues

in the case. This judgment was amended on July 27, 1984, when the court denied the parties' post-trial motions. Because of the basis upon which we decide this appeal, a further review of the facts is not necessary.

The initial issue raised is whether the new "no-fault" provision of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 401(a)(2)) applies to this appeal. Petitioner argues that we should apply the new no-fault provision because it is the law in effect at the time of the appeal. Respondent argues we should not apply the new provision because it was not in effect at the time proofs were closed. Respondent relies on the general rule that a party may not raise a new theory on appeal that was not raised below and that, in any event, the new no-fault provision is not retroactive and cannot be applied to this case.

■ Petitioner filed his petition for dissolution on April 30, 1980. The trial court denied the petition in an interlocutory order on October 28, 1982. Thereafter, the court entered its final judgment on June 1, 1984, and petitioner filed his post-trial motion on June 29, 1984. Public Act 83—954, which added the new no-fault provision, became effective on July 1, 1984. On July 27, 1984, the court denied both parties' post-trial motions. The rule is well established that where the legislature has changed the law pending an appeal, a case must be disposed of by the reviewing court under the law in force when the appeal is decided, and not as it was when the decision was made by the trial court. (*Rios v. Jones* (1976), 63 Ill. 2d 488; *Illinois Chiropractic Society v. Giello* (1960), 18 Ill. 2d 306.) While we note that this case was not actually on appeal at the time the new law went into effect, but was still pending in the trial court on post-trial motions, we find the above rule applicable in light of the fact that the trial court had entered its final judgment and petitioner had filed his post-trial motion prior to the effective date of the new no-fault provision. See *Rios v. Jones* (1976), 63 Ill. 2d 488; *Caleca v. Caleca* (1978), 63 Ill. App. 3d 414.

Contrary to respondent's argument, our supreme court has recently held that the no-fault provision is retroactive. (*In re Marriage of Semmler* (1985), 107 Ill. 2d 130, 136-37.) Further, it is axiomatic that the general waiver rule relied on by respondent does not apply when the new issue arises because of a change in law after the trial court's decision.

■ The no-fault provision allows a dissolution if three criteria can be established: (1) the parties have been separated for at least two years; (2) irreconcilable differences have caused an irretrievable

breakdown of the marriage; and (3) attempts at reconciliation have failed or future attempts at reconciliation would be impractical and not in the best interest of the family. (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 401(a)(2).) Irreconcilable differences has been defined as the existence of marital problems which have so impaired the marriage relationship that the legitimate objects of matrimony have been destroyed. (*In re Marriage of Walton* (1972), 28 Cal. App. 3d 108, 116, 104 Cal. Rptr. 472, 479.) An irretrievable breakdown of a marriage has been defined as where either or both parties are unable or refuse to cohabit and there are no prospects for a reconciliation. *Harwell v. Harwell* (1974), 233 Ga. 89, 90, 209 S.E.2d 625, 627.

■ When a court of review undertakes to decide an issue not raised below, it is essential that all factual matters necessary to the determination of the new issue be present in the record. (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313.) We find the present record sufficient to decide the present issue. It was undisputed at trial, and the trial court's judgment specifically found, that the parties separated in February of 1979, and that they have lived apart since that time. The record also shows that the parties attempted reconciliation and obtained counseling, but that the attempt failed. Lastly, it is clear from petitioner's petition for dissolution, respondent's counterpetition for legal separation, and the extensive trial testimony relating the difficulties, disputes and bitterness between the parties that there are irreconcilable differences between the parties and that the parties no longer wish to live together. Petitioner, therefore, is entitled to a judgment of dissolution under our State's no-fault provision.

Since we have determined that the trial court's judgment of legal separation must be reversed and a judgment of dissolution entered, we do not reach petitioner's arguments that the trial court erred in refusing to admit certain memoranda and testimony into evidence or that its finding on the lack of proof of mental cruelty was against the manifest weight of the evidence. Nor do we reach the issue of whether the trial court, in granting the legal separation, abused its discretion in enjoining petitioner from transferring or encumbering his assets during the legal separation.

The next issue raised is whether the trial court erred in requiring the establishment of a $250,000 educational trust for Scott, Katheryn and Nancy. We will address this issue on appeal since it will likely arise on remand under the judgment of dissolution. Petitioner argues that there were no special circumstances in the present case to justify imposing such a trust and that, even if the trust were proper, the

amount ordered is greatly in excess of what is needed. Respondent argues that petitioner's demonstrated unwillingness to make periodic educational payments and respondent's intent to retaliate against the children justify the imposition of the trust.

■ A child support trust for the education of any minor or dependent child may be established pursuant to section 503(g) of the IMDMA, which states:

> "The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." (Ill. Rev. Stat. 1983, ch. 40, par. 503(g).)

A trial court, in determining whether a trust should be created, however, must initially consider whether the trust is necessary to "promote and protect the best interests of the children" as required by the statute. (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 210.) The imposition of a section 503(g) trust is inappropriate, absent evidence of a need to protect the interests of the children and, therefore, is inappropriately applied to a responsible parent. *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 178-79, *cert. denied* (1982), 456 U.S. 905, 72 L. Ed. 2d 162, 102 S. Ct. 1751.

In *In re Marriage of Rochford* (1980), 91 Ill. App. 3d 769, the court held that the former husband's demonstrated unwillingness to make direct child support payments justified establishing a trust. There, the former husband was found in wilful contempt of court on three occasions for noncompliance with the trial court's judgment of dissolution which awarded the wife $3,600 per month in maintenance and child support. In the present case, however, while the wife filed five petitions for rule to show cause, alleging petitioner had failed to obey the court's temporary orders to pay the children's educational expenses, petitioner was never held in contempt. The mere filing of the petitions does not show that plaintiff wilfully violated the court's temporary orders. Further, our review of the record shows that the petitions do not justify the imposition of a trust. For example, respondent's fourth and fifth petitions were based on a $200 tuition deposit for the following year and a $205 mandatory school trip, both of which respondent was ultimately ordered to pay. The fifth petition was also based on petitioner's failure to pay Scott's summer school tuition, but it was filed before his summer tuition was due. Respondent's first and third petitions were based merely on two late payment fees, and there is no indication in the record that petitioner knew of

these late fees when he paid the tuition bills originally.

Respondent, to justify the imposition of a trust, also points to the fact that petitioner contested his obligation to pay for the children's educational expenses. Throughout the proceedings petitioner asserted that Scott and Susan were not minors and had sufficient assets, given to them by petitioner, to pay for their remaining college expenses. Petitioner also argued that Scott, Katheryn and Nancy did not need to attend the private schools where they had recently enrolled because they could receive an adequate education in the public school system. Petitioner's resistance at trial does not justify the imposition of a trust. Vigorous defense of one's financial status in desire to retain as many assets as possible does not necessarily require the imposition of a trust. *Cf. Green v. Green* (1976), 41 Ill. App. 3d 154 (vigorous defense of one's financial status does not necessarily require an award of alimony in gross).

Our review of the record also shows that petitioner did not seek to enjoin Scott from attending summer school, as respondent argues. Rather, petitioner sought an injunction for the return of a "Datsun vehicle" which Scott had been using at school because petitioner had used it in years past for his golf course business and he believed Scott would be out of school for the summer and had a motorcycle for use during the summer. Petitioner did not seek to be released from his duty for educational support when Scott turned 21, as respondent argues. To the contrary, petitioner moved to reduce respondent's temporary maintenance based on a change of circumstances which included the fact that since he was paying Scott's educational expenses and Scott was in his last year of college and was soon to turn 21, respondent was no longer actually supporting Scott.

Petitioner argues that the trust is unnecessary to protect the children, as demonstrated by the fact that he voluntarily paid their educational expenses between the time of the separation and the filing of the present action. Respondent disputes this fact, but all of the "numerous overt acts of resistance" she relies on occurred after this action was filed. Therefore, it appears undisputed that petitioner did voluntarily pay the educational expenses of the children for the 15 months between the parties' separation and the commencement of this action. Under similar circumstances, the court in *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, held that a trust was improper, stating:

> "In the present case, no special circumstances exist which would warrant the establishment of a trust or fund. There was no evidence that the respondent was unlikely to provide for the

support of the child. While there was an interruption of support during these proceedings and the instigation of contempt procedures, the record clearly indicates that respondent supported both petitioner and his child from the time the parties were separated until the filing of this action." 89 Ill. App. 3d 304, 310-11.

■ Respondent lastly argues that a child support trust is justified because petitioner has shown that he intends to retaliate against the children. Respondent relies on the circumstances that petitioner did not attend Susan's wedding or two of the children's graduations, that he contested paying for graduate school because his natural children never attended graduate school, and that he does not wish respondent nor the children to take from his estate at his death, to establish petitioner's intention to retaliate against them. While we agree that these facts may show that petitioner no longer has a good relationship with his adopted children, we do not agree that they demonstrate that petitioner will "retaliate" by refusing to pay the educational expenses of the children when ordered to do so. The trial court, therefore, did abuse its discretion in requiring petitioner to establish an educational trust for the children.

Beyond the establishment of the trust, petitioner also argues that the court erred in requiring him to pay the medical expenses of the nonminor children while they are in school. Petitioner relies on *In re Marriage of Moore* (1983), 117 Ill. App. 3d 206. In *Moore*, the father was required to pay child support until each child reached 18 or finished high school. Further, he was ordered to pay the higher education expenses of the children through graduate school and to pay their medical and dental expenses until each child reached age 22. On appeal the wife conceded that the order to pay the children's medical and dental expenses until the age of 22 was error, and the court thereupon reversed that portion of the order, citing the general child support statute, section 505 of the IMDMA (Ill. Rev. Stat. 1979, ch. 40, par. 505).

■ *Moore*, however, is distinguishable and, therefore, does not control this case. First, in *Moore*, the issue of medical expenses was conceded on appeal and was not actually decided by the court. Second, the order to pay medical expenses of the children until the age of 22 was not tied to the order to pay the higher educational expenses of the children through graduate school. Therefore, the order improperly required the father to pay the medical expenses of the children after their majority even if they were not in school. (See Ill. Rev. Stat. 1983, ch. 40, par. 505.) In the present case, the court's order only re-

quired petitioner to pay for the medical expenses of the children after their majority if they were attending school. We find no error in such an order.

Section 513 of the IMDMA states, in relevant part:

"The Court also may make such provision for the education *and maintenance* of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 40, par. 513.)

Because the statute authorizes a court to provide for the education *and maintenance* of the child, respondent is also entitled to the reasonable living expenses of the child (*In re Marriage of Pauley* (1982), 104 Ill. App. 3d 100, 104), which can include medical expenses. Therefore, while a trust is improper in the present case, the trial court may require petitioner to pay for the medical expenses of the children after their majority for any year they may be attending college.

Respondent, in her cross-appeal, argues that the trial court abused its discretion in awarding maintenance and attorney fees. The court awarded respondent up to $300,000 to purchase a new home which was to be placed in joint tenancy or tenancy in common with petitioner, $50,000 to furnish the home, $18,000 for the purchase of a new automobile, and periodic payments of $10,000 per month. The court also ordered petitioner to pay $50,000 of respondent's reasonable attorney fees and costs in addition to the fees he had previously paid (approximately $27,950), leaving respondent about $86,300 to pay from her own assets. Respondent contends that the award of maintenance is inadequate to meet her reasonable needs based upon the parties' lifestyle during the marriage and that the court erred in ordering her to pay the bulk of her attorney fees in light of her financial inability to do so.

■ While an award of maintenance under a judgment of dissolution is generally based on the same factors as an award of maintenance under a judgment of legal separation (see Ill. Rev. Stat. 1983, ch. 40, par. 504(b)), we do not reach the issues regarding maintenance raised by respondent for two reasons. First, under section 504(b)(1) the trial court should consider the marital property apportioned to respondent in awarding her maintenance under a judgment of dissolution. Because the trial court did not apportion the marital property under a judgment of legal separation, it could not have considered this factor. Second, in light of the fact that the parties were still le-

gally married, the trial court ordered that respondent hold her new home in joint tenancy or tenancy in common with petitioner. Under a judgment of dissolution, the creation of a joint ownership in property is not favored because it may tend to encourage friction between the parties. (*In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 656.) Taking into consideration these two factors, we find that the award of maintenance must be completely redetermined by the trial court on remand and, therefore, do not reach respondent's arguments. Further, since respondent's ability to pay any portion of her attorney fees will depend on the amount of marital property and maintenance awarded to her, we cannot address respondent's arguments on that issue.

For the reasons set forth above, the judgment of the circuit court of McHenry County is reversed and the cause is remanded with directions. On remand, the trial court shall enter an immediate order of dissolution of marriage between the parties. Thereafter, the court shall reconsider the issues of maintenance and attorney fees in a manner not inconsistent with this opinion.

Reversed and remanded with directions.

STROUSE and UNVERZAGT, JJ., concur.