*In re* MARRIAGE OF GERALD J. SMOLLER, Petitioner-Appellant, and OLIVIA SMOLLER, Respondent-Appellee.

First District (1st Division)   Nos. 1—89—0877, 1—89—1294 cons.

Opinion filed August 12, 1991.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Howard A. London, of counsel), for appellant.

Batler & Schwartz, of Buffalo Grove, and Kirsh, Berman & Hoffenberg, of Chicago (Jerome M. Kaplan and Allan Hoffenberg, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Gerald Smoller appeals from the denial of his petition for dissolution of marriage and from the denial of a motion for a change of venue based on the prejudice of the trial judge.

Gerald and Olivia Smoller were married on August 1, 1965. They have two children, a daughter, born June 23, 1968, and a son, born May 6, 1971.

On August 5, 1985, Gerald filed a petition, as amended, for dissolution of marriage on grounds of irreconcilable differences and mental and physical cruelty. (Ill. Rev. Stat. 1985, ch. 40, pars. 401(a)(1), (a)(2).) Olivia subsequently filed a petition for legal separation and custody.

Bifurcated trial proceedings in the matter began in April 1988.

Following testimony on the issue of grounds, the trial judge denied Gerald's petition, determining, in part, that the evidence did not support a finding of irreconcilable differences but indicated merely that Gerald was more interested in a relationship with another woman. The trial judge also remarked that he did not believe Gerald had made attempts at reconciliation or that future attempts would be futile.

Trial continued on the issues of maintenance, child support, and educational expenses for the children. During that portion of the trial, Gerald unsuccessfully sought a change of venue based on the prejudice of the trial judge (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001(a)(2)).

Ultimately, judgment for a legal separation was granted in Olivia's favor and Gerald was ordered to pay maintenance, child support, col-

lege expenses for the couple's daughter, and attorney fees incurred by Olivia.

This appeal followed.

In appealing from the denial of his petition for dissolution, Gerald argues only that the determination that irreconcilable differences were not sufficiently proved was against the manifest weight of the evidence. He makes no challenge that the denial was improper in light of evidence produced as to the other grounds alleged. Accordingly, we summarize, below, only testimony adduced pertinent to the issue of irreconcilable differences.

Gerald testified that difficulties in the marriage began approximately at the time of the birth of the couple's son in 1971. Disagreement first arose over whether the couple could afford to purchase a house. Nevertheless, the couple purchased a house in 1971 with a down payment provided by Gerald's parents. Disagreement later arose concerning finances and disciplining the children. Olivia also ceased attending social gatherings with Gerald at that time. The couple's physical relationship also deteriorated. At one point, Olivia asked Gerald to sleep in a separate room.

In February 1982, Gerald moved out of the house at Olivia's request, but returned after eight days. Within months, disagreements again arose. In fact, Gerald testified, the couple could not agree on any matter. Gerald also stated that, during that time, Olivia did not want him to sleep in the couple's bedroom. Affection between them had ceased. Olivia requested Gerald to quit the marital residence on numerous occasions. Gerald had suggested that the couple seek counseling, but Olivia refused.

In May 1983, Gerald again left the marital residence. However, he continued to visit on a regular basis to see the children and care for the house. He and Olivia would also, together, see mutual friends on weekends. Gerald testified he was uncertain of the status of their marriage at that time.

Gerald returned to the marital residence in September 1983. Arguments continued over finances and other matters. Gerald again suggested counselling but Olivia refused.

Gerald moved out of the marital residence for the last time in December 1984 and the couple has lived separate and apart since that time. Gerald stated that when he left, he told Olivia he was never returning. He stated he has no feelings for her.

In 1985, however, the couple sought counseling from Elaine Krumbien, a social worker contacted by Olivia. By that time, Gerald was dating another woman, whom he had met after leaving the mari-

tal residence. Olivia insisted to Krumbien that her further attempts at reconciliation were dependent on Gerald ending his relationship with that woman. Krumbien believed Gerald's relationship with the woman was irrelevant. Because Olivia felt Krumbien condoned Gerald's relationship with the other woman, Olivia refused further counselling with Krumbien.

Gerald refused to make further reconciliation efforts.

Olivia's testimony contradicted Gerald's explanation of the couple's disagreements. Contrary to Gerald's statement that the couple disagreed over many matters, Olivia testified the couple was able to resolve almost all of their differences. Olivia also denied ever having told Gerald that she did not want to be married to him and that she wanted him to quit the marital residence. However, she acknowledged Gerald had informed her in 1984 that he intended to leave when a settlement was realized in a lawsuit he had referred to another attorney. After Gerald left in December 1984, he refused to talk to Olivia, except regarding their children, and told her that he had no interest in their marriage. Olivia testified it was she who suggested counselling and that it was Gerald who had refused. Gerald had, however, agreed to see Krumbien. Olivia admitted to refusing to continue counselling with Krumbien and stated Gerald refused Olivia's request to seek other counselling. Finally, Olivia stated she continues to love Gerald and desires to remain married to him but that Gerald hates her.

■ In Illinois, pursuant to section 401(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act), a marriage may be dissolved without a determination of the fault of either party where three conditions exist: the parties have lived separate and apart for a continuous period in excess of two years; irreconcilable differences have caused the irretrievable breakdown of the marriage; and efforts at reconciliation have failed or future reconciliation attempts would be impracticable and not in the best interests of the family. Ill. Rev. Stat. 1985, ch. 40, par. 401(a)(2); Ill. Ann. Stat., ch. 40, par. 401, Supplement to Historical & Practice Notes at 19 (Smith-Hurd Supp. 1991).

The Supplement to the Historical and Practice Notes to the Act direct attention to *In re Marriage of Bates* (1986), 141 Ill. App. 3d 566, 570, 490 N.E.2d 1014, 1016, as some guidance in interpreting the requirements of section 401(a)(2). *Bates* involved an appeal from the denial of a petition for dissolution based upon allegations of mental cruelty. However, the appellate court held the no-fault provision of section 401(a)(2) applicable even though the section became effective during the pendency of post-trial motions. Determining the record

provided sufficient basis to address the issue for the first time on appeal, the court found the requirements of the section satisfied.

▮ Specifically, the court concluded the parties had been separated for the minimum period of two years, had attempted reconciliation and counselling without success, and that difficulties and bitterness existed between the parties. The court found the petitioner entitled to dissolution pursuant to the section and remanded the cause with directions to the trial court to enter an immediate order accordingly. (*Bates*, 141 Ill. App. 3d at 570, 575, 490 N.E.2d at 1016, 1020.) In so holding, the court defined irreconcilable differences as "the existence of marital problems which have so impaired the marriage relationship that the legitimate objects of matrimony have been destroyed," following the California Appellate Court's definition of that term in *In re Marriage of Walton* (1972), 28 Cal. App. 3d 108, 116, 104 Cal. Rptr. 472, 479. (Ill. Ann. Stat., ch. 40, par. 401, Supplement to Historical & Practice Notes, at 19 (Smith-Hurd Supp. 1991).) The court further defined an irretrievable breakdown of a marriage to exist "where either or both parties are unable or refuse to cohabit and there are no prospects for a reconciliation," following the Georgia Supreme Court's interpretation of that phrase in *Harwell v. Harwell* (1974), 233 Ga. 89, 91, 209 S.E.2d 625, 627. Ill. Ann. Stat., ch. 40, par. 401, Supplement to Historical & Practice Notes, at 19 (Smith-Hurd Supp. 1991).

Relying primarily on *Bates* and cases cited therein, Gerald contends here that Olivia's desire to maintain the couple's marriage, a desire Gerald does not share, cannot negate the conclusion that the evidence established that the legitimate objects of matrimony no longer exist.

Olivia does not dispute that the parties have lived separate and apart for the requisite two-year period, but contends Gerald's testimony was insufficient to determine that irreconcilable differences existed and that attempts at reconciliation would be futile. Olivia focuses primarily on the trial judge's assessment of Gerald's testimony. In essence, she argues the trial judge, in proper exercise of his power as trier of fact, simply rejected Gerald's testimony, rendering Gerald's unilateral assertions insufficient to sustain his burden under the petition.

▮ We note that, in cases decided prior to codification of section 401(a)(2), Illinois courts recognized that dissolutions should not be lightly granted under the Act in furtherance of an expressed public policy to preserve marriages. (See, *e.g., Stanard v. Stanard* (1969), 108 Ill. App. 2d 240, 247 N.E.2d 438; *McGowan v. McGowan* (1973),

15 Ill. App. 3d 913, 305 N.E.2d 261.) Adoption, in 1984, of section 401(a)(2) and its provision for dissolution based on irreconcilable differences, however, indicates our General Assembly recognized the policy no longer served when the State's interest in preserving a marriage is not also shared by the parties themselves. It seems clear that included as a legitimate object of a marriage is the fulfillment of each party's desire to continue in that legally sanctioned union, evidenced by the absence of differences so serious as to undermine the marriage relationship. The critical inquiry here, given satisfaction of the other requirements of section 401(a)(2), is whether that section permits a finding of irreconcilable differences where only one of the parties desires to maintain the union.

We must conclude that it does. Where evidence shows one spouse clearly desires to no longer continue to be married to the other, an irreconcilable difference necessarily arises between them causing an irretrievable breakdown of the marriage. Indeed, if a greater difference can exist within the context of a marriage relationship than one between spouses where one refuses to continue as the spouse of the other, we are at pains to conceive of it. As observed by Justice Robertson of the supreme court of Mississippi:

> "That one spouse out of blindness, obstinance or nostalgia refuses to recognize it hardly means that a marriage may not in fact *** be irretrievably broken. As a matter of common sense, there can be irreconcilable differences within a marriage even when one spouse refuses to accept or recognize that fact." (*Gallaspy v. Gallaspy* (Miss. 1984), 459 So. 2d 283, 287 (Robertson, J., dissenting).)

We believe a contrary interpretation of section 401(a)(2) would be inconsistent with the intent to provide a no-fault provision for the dissolution of marriages. We therefore determine that evidence may establish, as in other cases where irreconcilable differences are alleged, the existence of such a basis to support the dissolution of a marriage under section 401(a)(2) where even one spouse does not desire to continue to be married to the other. See *Gallaspy v. Gallaspy* (Miss. 1984), 459 So. 2d 283, 287 (Robertson, J., dissenting).

■■ The testimony in the instant case was sufficient to establish an irreconcilable difference to support dissolution. Specifically, Gerald testified that he has no intention of returning to Olivia and holds no affection for her. Olivia's testimony that Gerald hates her and no longer desires to be married to her despite her continued love for him corroborates that sentiment. We need look no further to find the requirement of an irreconcilable difference satisfied and thus conclude

the denial of dissolution was against the manifest weight of the evidence.

The record otherwise indicates the other requirements of section 401(a)(2) are satisfied. The parties have lived separate and apart for more than two years, and both parties testified that Gerald refuses to seek further counselling. We therefore reverse the judgment denying Gerald a dissolution of marriage based upon irreconcilable differences and, upon remand, in the same manner as in *Bates*, direct that an order be entered accordingly.

Last, we address Gerald's argument that his motion for change of venue based on the prejudice of the trial judge should have been granted. Although the original motion raised numerous alleged examples of bias, Gerald focuses here upon the following comments made by the trial judge regarding Gerald's refusal to pay Olivia's credit card debt, the subject of a separate action:

> "Counsel, I want both of you to know there are a series of *** bills that Mr. Smoller has paid *** and *** that he has been paying over a period of years. I am not going to tolerate it. He is a man. He is living in a world of men. He has a wife and two children, and I expect him to act as a man. I don't have to enter orders. I expect you to act as a man sir. Do you understand it?"

Generally, a motion for a change of venue based on the prejudice of the trial judge is untimely if brought after a hearing on the merits has started, or a ruling on a substantial issue in the case has been made, so as to preclude a litigant's attempt to "judge shop" after forming an opinion that the judge may be unfavorably disposed toward that litigant's cause. (*Becker v. R.E. Cooper Corp.* (1990), 193 Ill. App. 3d 459, 550 N.E.2d 236.) Gerald's motion in the instant case is untimely to the extent that it was made subsequent to the denial of Gerald's petition for dissolution. And, while courts have considered the issue despite the untimeliness of the motion where the matter or prejudice is raised at the earliest practical moment after its discovery (see *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 463 N.E.2d 719), we do not find the circumstances here permit application of that exception. Gerald's motion cites various examples of alleged prejudice, including an allegation of bias based on the denial of Gerald's petition, which occurred prior to the comments noted above. However, observing that those comments are, at least, suggestive of some degree of bias and that assignment of the matter to a different judge may preclude the issue from again having to be considered, we conclude a

change of venue should be allowed pursuant to our power under Supreme Court Rule 366. 134 Ill. 2d R. 366.

For the above reasons, we reverse the denial of dissolution and direct that an order be entered granting Gerald's petition on the basis of irreconcilable differences and remand for further proceedings in light of that order. Although we affirm the denial of Gerald's motion for a change of venue, we direct that, on remand, the remaining issues are to be resolved before a different trial judge.

Reversed in part, affirmed in part, and remanded.

MANNING, P.J., and BUCKLEY, J., concur.