# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## CLARK MATTHEW EARLS v. SHIRLEY ANN EARLS

### Direct Appeal from the Circuit Court for Williamson County
### No. II-98458   Russ Heldman, Judge

---

### No. M1999-00035-COA-R3-CV - Decided June 20, 2000

---

KOCH, J. delivered the opinion for the court, in which CAIN, J. and COTTRELL, J. joined.

### OPINION DENYING PETITION FOR REHEARING

Shirley Ann Earls has filed a petition pursuant to Tenn. R. App. P. 39 requesting this court to reconsider portions of its May 31, 2000 opinion. Even though the petition raises issues that have already been carefully considered by each member of the court, the nature of the case prompts us to file this opinion elaborating on our initial opinion.[1]

Each member of the court has read the entire record on appeal and is fully aware of the unfortunate and difficult circumstances in which Clark Earls and Shirley Earls find themselves. Our original opinions reflect our best efforts to employ traditional legal principles to do justice between these two persons in light of our understanding of the facts and the current governing law. Our opinions also reflect our recognition of the practical limitations on both trial and appellate courts when they undertake to sort out and rearrange the personal and financial relations of parties whose marriage is irretrievably broken. Judges cannot rekindle love and affection once it has been extinguished. Nor can they provide assets or income that the parties themselves do not have. Nor can they restore to good health persons who bodies have been broken by unexpected catastrophic injury. Judges must take the parties as they find them and must consider the facts of each case objectively. They must also apply the applicable legal principles to these facts in a disciplined, dispassionate way. The three opinions filed in this case on May 31, 2000 reflect that each member of the court has discharged this obligation.

---

[1]Prior to the filing of Ms. Earls' petition for rehearing, each member of this court received a lengthy letter from the trial court regarding the substantive issues raised by the parties and addressed by the court in our May 31, 2000 opinions. The trial court's letter was not considered by this court and has not influenced our deliberations or decisions regarding the issues raised in Ms. Earls' petition for rehearing.

# I.
## THE PROPRIETY OF THE DIVORCE

Ms. Earls first asks us to reconsider the majority's conclusion that the facts supported entering an order in accordance with Tenn. Code Ann. § 36-4-129 (Supp. 1999) declaring the parties divorced. This request stems from Ms. Earls' belief that the majority has embraced the concept of "no fault" divorce and that the record contains no evidence of a series of misconduct on her part that provides Mr. Earls with grounds for divorce. Ms. Earls is mistaken on both counts.

The majority's opinions do not depart from traditional legal principles to embrace the concept of "no fault" divorce. Neither the majority opinion nor the concurring opinion can reasonably be construed to hold that parties may be divorced without some proof or stipulation of one or more of the statutory grounds for divorce or that trial courts must grant a divorce every time the parties themselves have agreed that continued cohabitation is unacceptable. To the contrary, all three opinions filed on May 31, 2000 rest on the following settled, well-recognized principles:

(1)     that a divorce must rest on one of the statutory grounds for divorce, *see Clothier v. Clothier*, 33 Tenn. App. 532, 538, 232 S.W.2d 363, 366 (1950);

(2)     that trial courts should be afforded wide latitude to determine whether the parties in a particular case should be divorced, *see Marmino v. Marmino*, 34 Tenn. App. 352, 355, 238 S.W.2d 105, 107 (1950);

(3)     that appellate courts must review a trial court's findings of fact in a divorce case using the Tenn. R. App. P. 13(d) standard of review, *see Hansel v. Hansel*, 939 S.W.2d 110, 111 (Tenn. Ct. App. 1996); and

(4)     that Tenn. R. App. P. 36(a) empowers appellate courts reviewing decisions in divorce cases to grant the relief, consistent with the facts and the applicable law, to which the parties are entitled. *See Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Mondelli v. Howard*, 780 S.W.2d 769, 772-73 (Tenn. Ct. App. 1989).

As Judge Cottrell points out in her concurring opinion, this court's differences revolve around the issue of whether the record contains sufficient evidence of inappropriate marital conduct by both parties to warrant declaring the parties divorced in accordance with Tenn. Code Ann. § 36-4-129. Judges Koch and Cottrell have answered this question in the affirmative; while Judge Cain has answered it in the negative. Accordingly, Judge Koch's and Judge Cottrell's opinions stand for only two propositions – first, that the evidence preponderates against the trial court's findings that the record contains no evidence of inappropriate marital conduct by Ms. Earls and that Ms. Earls would be "more aggressive in pursuing reconciliation" if Mr. Earls' divorce petition was dismissed and second, that these two persons should be declared divorced in accordance with Tenn. Code Ann. § 36-4-129 based on the facts of this case and the applicable state law. Judge Cain disagrees with the

former proposition but would agree with the latter if he was convinced that the record contained evidence of inappropriate marital conduct on Ms. Earls' part.

Each member of the court has again reviewed the record and counsel's representations during oral argument in light of Ms. Earls' insistence that the record contains no evidence of a series of marital misconduct on her part that would warrant declaring the parties divorced. All judges adhere to their original decisions. Judges Koch and Cottrell again conclude that the record contains evidence of Ms. Earls' behavior[2] over a sustained period between March 1997 and July 1998 that caused pain and anxiety to Mr. Earls and that rendered continued cohabitation unacceptable.[3] For his part, Judge Cain adheres to his conclusion that the record contains no evidence of fault on Ms. Earls' part. Accordingly, the majority's conclusion remains that the record contains evidence of inappropriate marital conduct by both Mr. and Ms. Earls and, therefore, that the trial court should have declared them divorced in accordance with Tenn. Code Ann. § 36-4-129.

## II.
### SPOUSAL SUPPORT

Ms. Earls also takes issue with aspects of the decision regarding spousal support. She asserts that the court did not give appropriate weight to her prospects for rehabilitation, her predicament should her parents become unable to assist her, and the prospect that she will be required to obtain additional public assistance in the future. Each of these possibilities – and many others – were considered by the court during our original analysis of this case.

Our consideration of the support issue began with recognizing that the trial court's judgment would have rendered Mr. Earls financially unable to support himself.[4] In the process of addressing this problem, we took into consideration Ms. Earls' current physical condition, the duration of the marriage, the division of the marital assets and debts, and the other applicable factors contained in Tenn. Code Ann. § 36-5-101(d) (Supp. 1999). We determined that the evidence does not support

---

[2]This behavior does not include Ms. Earls' injury or her rehabilitation efforts. Rather, the behavior involves her treatment of and attitude toward Mr. Earls. As Judge Cottrell points out in her concurring opinion, the record demonstrates that each party's conduct has caused the other party pain and distress and that neither party has any "intention, hope, or desire to live with the other or to re-establish or maintain a marital relationship."

[3]There is likewise evidence that Mr. Earls engaged in conduct during the same period that rendered continued cohabitation unacceptable to Ms. Earls.

[4]That order required Mr. Earls to pay more money in spousal and child support and in payment of Ms. Earls' medical expenses than he earned. There can be little dispute that such an award cannot stand. The combined effect of spousal and child support awards cannot leave the obligor spouse unable to support himself or herself. *See generally Anderton v. Anderton*, 988 S.W.2d 675, 678-79 (Tenn. Ct. App. 1998).

a conclusion that Ms. Earls will be capable of rehabilitating herself to the point where she could be financially self-sufficient. Accordingly, we declined to characterize the spousal support we awarded as "rehabilitative alimony." Rather, we fixed a definite amount of future support to be paid in monthly installments as authorized by Tenn. Code Ann. § 36-5-101(a)(2)(A).[5] After considering the factors in Tenn. Code Ann. § 36-5-101(d)(1), Judges Koch and Cottrell determined that Mr. Earls should pay Ms. Earls $450 per month through March 31, 2006.[6]

In apparent recognition of the limits on Mr. Earls' ability to pay support, Ms. Earls has not taken issue with the amount of the monthly payments set in the May 31, 2000 opinion. However, she insists that these payments should be left open-ended. We have again reviewed our disposition of the spousal support question and have determined that based on the facts of this case and the applicable statutory factors enumerated both the duration and the amount of the support award are appropriate.

### III.
#### THE CUSTODY OF THE CHILD

As a final matter, Ms. Earls takes issue with a portion of the May 31, 2000 opinion establishing joint custody with Mr. Earls as the primary physical custodian. She concedes that she and Mr. Earls had agreed to this arrangement prior to trial but insists that her agreement was premised on her understanding that an improvement in her physical condition would be a change of circumstance that could trigger a re-examination of the custody issue.

This court's opinions regarding custody need to be understood for what they do and do not do. All members of the court have agreed that the evidence does not indicate that a joint custody arrangement would be inappropriate at the present time or that Mr. Earls is unfit to be the custodial parent in a joint custody arrangement.[7] In light of the parties' agreement and the child's interest in continuity and stability, Judges Koch and Cottrell have determined that the child's interests would be served best by establishing this arrangement by court order without further proceedings. Judge Cain would leave open an initial award of custody and remand to give Ms. Earls an opportunity to request custody, which she has not previously done.

---

[5]Tenn. Code Ann. § 36-5-101(d)(1) preserves the distinction between alimony in solido and rehabilitative support by stating that "[r]ehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony."

[6]This amount includes payments of Ms. Earls' continued insurance coverage. In addition, Mr. Earls is still obligated to pay the accumulated unpaid medical expenses not covered by insurance that were incurred prior to the divorce.

[7]In this regard, all members of the court agree that the evidence preponderates against the trial court's conclusion that Mr. Earls is somehow "morally unfit" to be the child's custodial parent because of his relationship with Ms. Moore.

There is no majority opinion regarding what Ms. Earls' burden of proof might be should she, at some future time, seek to change or modify the custody arrangement. Judge Koch, believing that parties cannot by agreement vary the legal standards for determining whether changing custody is in a child's best interests, has determined that Ms. Earls' burden of proof must be consistent with the traditional "material change of circumstances" burden of proof routinely followed in change-of-custody cases. Judge Cottrell has determined that the court need not address this issue in this proceeding. Judge Cain avoids the issue entirely by remanding the case for an initial custody hearing if Ms. Earls wants one.[8] With the court in this posture, our May 31, 2000 opinions do not definitely decide the burden-of-proof issue presently of concern to Ms. Earls. Thus, our May 31, 2000 opinions do not prevent Ms. Earls from seeking custody of the parties' child at any time or for any reason. Should she do so, she is free to present any argument to the court she wishes regarding her burden of proof, including the legal effect, if any, of the parties' original custody stipulation. The trial court is likewise free to use appropriate legal principles to decide what Ms. Earls' burden of proof should be.

**IV.**

Based on our review of the record and our May 31, 2000 opinions in light of the points raised in Ms. Earls' petition for rehearing, all members of the court have determined that their original opinions should stand without modification. Accordingly, Ms. Earls' petition for rehearing is respectfully denied. The costs of this petition for rehearing are taxed to Ms. Earls for which execution, if necessary, may issue.

---

[8]Judge Cain agrees that the ordered joint custody arrangement is proper if Ms. Earls does not timely request a custody hearing.

- 5 -