# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## CLARK MATTHEW EARLS v. SHIRLEY ANN EARLS

### Direct Appeal from the Circuit Court for Williamson County
### No. II-98458      Russ Heldman, Judge

---

### No. M1999-00035-COA-R3-CV - Decided May 31, 2000

---

JUDGE CAIN dissenting.

I respectfully dissent from the holding of the court that the record in this case provides any basis for granting Mr. Earls a divorce from Ms. Earls on fault-based grounds, including simply declaring the parties divorced under Tennessee Code Annotated section 36-4-129(b)(Supp. 1999) which itself is fault-based. The trial court refused to grant such divorce and on Tenn. R. App. P. Rule 13(d) review in this court, the evidence not only does not preponderate against the findings of fact of the trial court but rather strongly supports the trial court action.

I.      The Issues Drawn by the Pleadings

Mr. Earls' complaint of July 17, 1998 sought divorce only on grounds of irreconcilable differences pursuant to Tennessee Code Annotated section 36-4-101(11). Filed with the complaint was a marital dissolution agreement ("MDA") executed by the parties on July 16, 1998. On August 5, 1998, Ms. Earls filed her answer and counter-claim disavowing the MDA and asserting that same had been procured by undue influence of Mr. Earls at a time when she was under duress. She prayed for neither divorce nor legal separation but only a declaration that the MDA was ineffective, that Mr. Earls be required to keep her insured under his health insurance policy with his employer and that he be enjoined from dissipating marital assets. She further asked for temporary support, alimony in futuro, reasonable attorney fees and general relief.

On August 13, 1998, Mr. Earls filed a motion for leave to amend his complaint stating: "In support, Plaintiff would show that he filed for divorce on the grounds of irreconcilable differences and that his Wife signed a marital dissolution agreement but has asked this court to void the agreement, so that it is necessary for Plaintiff to allege additional grounds." On August 13, 1998, Mr. Earls filed his answer to the counter-complaint therein asserting the validity of the MDA, denying that Ms. Earls was unable to be gainfully employed, and making the following assertion: "Husband would show that Wife refuses to help herself, refuses to do the exercises prescribed her, and would further show that Wife can walk with the aid of a walker, and can work a computer. Husband would show that Wife is apparently depressed and does not want to improve despite Husband's best efforts in helping Wife."

On August 26, 1998, the parties filed an agreed order providing leave to Mr. Earls to amend his complaint, enjoining Mr. Earls from removing Ms. Earls from his health insurance policy and providing that Mr. Earls should account for all monies in the safe deposit box and that he would deposit the remaining $4,300 therein located into the registry of the court pending further orders of the court. This order further provided that Mr. Earls would pay temporary alimony of $211 per month with Mr. Earls continuing to be responsible for joint debts and Mr. Earls retaining the monthly social security checks for the minor son of the parties.

On December 14, 1998, Mr. Earls filed his amended complaint asserting in part:

> 1. The parties' [sic] have one minor child, Sage, and Husband is the fit and proper person to have custody of the parties' minor child. Although Wife is disabled, she is capable of some employment and is capable of rehabilitating herself, and will be able to provide child support at some future time.

> 2. Wife is guilty of inappropriate conduct causing the breakup of the marriage. After Wife's injury, she had opportunity to help herself heal, but instead refused help, refused therapy, and even quit occupational therapy. Husband took family leave from his employment to assist in Wife's recovery, and Husband's mother even moved in with the parties to help. Wife refused to assist herself, refused to do the exercise necessary for her to regain her health, and caused the breakdown of the marriage.

In this amended complaint, Mr. Earls sought absolute custody of the minor child with reasonable visitation for Ms. Earls. In addition, he sought an absolute divorce from Ms. Earls.

The parties entered into an oral stipulation that they would have joint custody of the minor child with Mr. Earls having primary physical custody. This stipulated custody arrangement was implemented by the parties. Ms. Earls answered the amended complaint of Mr. Earls on December 17, 1998. Specifically, in response to paragraph one of the amended complaint relative to custody, she asserted: "Based upon the stipulation entered into by the parties regarding custody, there is no further need to respond to the averment." In this answer to the amended complaint, Ms. Earls sought only that Mr. Earls' complaint be dismissed and that she be awarded attorney fees and expenses.

On March 10, 1999, after the first day of the trial of this case, Ms. Earls filed a document entitled "Wife's Prayer for Relief." Ms. Earls sought child support, alimony in futuro and the dismissal of Mr. Earls' complaint. She requested weekend-long visitation each weekend and nightly phone visitation. This document also made the following request:

> 2. Pursuant to the parties' stipulation, custody shall be awarded jointly to the parties with primary physical care of Sage to be with Husband. However, because of Wife's physical disability, in the event she is able to rehabilitate herself to the point that she can physically take care of Sage, Wife will have the right to request the court to review custody using a comparative fitness analysis so that

Wife's improved health would be a material change in circumstances.

## II.     The Evidence in the Case

As the majority opinion appropriately reflects, this record taken as a whole shows two decent young people trying desperately to cope with a personal tragedy so overwhelming that no court, trial or appellate, can but feel its own inadequacy. The case for Mr. Earls consists almost entirely of his own testimony and the testimony of his mother. He testified that his stress in this difficult situation was compounded by frustration because Ms. Earls did not follow the advice of her therapists, did not use prescribed exercises or devices and did not practice her walking. After a year and a half of attending to Ms. Earl's needs, Mr. Earls was just "full up to here." Mr. Earls states that Ms. Earls could not apparently overcome her anger about her injury, and she was silent, noncommunicative, resentful and cold toward Mr. Earls. As time passed both parties became frustrated with arguments and name calling. In June of 1998, Mr. Earls employed Laura Moore as a babysitter. Shortly thereafter, he developed a relationship with her that he asserts unpersuasively did not include ultimate intimacy.

Ms. Earls, in her testimony, confirms many of the frustrations felt by Mr. Earls and acknowledges the extent to which her husband tried to help her. She denies that she failed to try to facilitate her own recovery but asserts that she did the best she could in her therapy. She acknowledges that she became depressed but denies any conduct which could put her at fault for the breakup of the marriage of the parties.

Missing from this record is the testimony of any doctor, nurse, therapist, or occupational recovery specialist to establish the alleged deficiencies in Ms. Earls'efforts to promote her own recovery, or in establishing the extent to which her recovery is possible. The case for Mr. Earls is predicated entirely on his own subjective observations and those of his mother.

## III.    The Judgment of the Trial Court

Final judgment was entered in the trial court on April 6, 1999. The trial court held that Mr. Earls had failed to carry his burden of proof that Ms. Earls had been guilty of inappropriate marital conduct. The court further held, in spite of the stipulation of the parties at the outset of the trial to the contrary, that custody of the minor child should be vested in Ms. Earls. The court further ordered Mr. Earls to maintain the existing health insurance coverage on Ms. Earls, pay $570 per month alimony in futuro, and all uncovered future medical expenses. The court further held: "9. Plaintiff shall be permanently enjoined from bringing Sage around Laura Moore or having Laura Moore present during his visitation. In addition, Plaintiff is permanently enjoined from coming around Laura Moore as long as he is married." From this judgment, Mr. Earls appeals.

## IV.    Divorce

In his first issue on appeal, Appellant asserts "the trial court erred in failing to grant a divorce to Mr. Earls based on inappropriate marital conduct." In denying a divorce to Mr. Earls, the trial court asserted a belief that there could be a reconciliation between the parties. With all deference to the trial judge, this record establishes no reasonable hope for reconciliation. The marriage between these parties is "irretrievably broken" and two questions must be answered:

1. Does the evidence establish "fault" on the part of Ms. Earls so as to entitle Mr. Earls to a divorce for her inappropriate marital conduct?

2. Can a divorce be granted to Mr. Earls without finding Ms. Earls to be at fault?

The Tennessee Code recognizes no-fault divorce only in the context of "irreconcilable differences" under section 36-4-101(14) and two years separation under section 36-4-101(15). Tenn. Code Ann. §§ 36-4-101(14), (15) (Supp. 1999). No divorce can be granted on grounds of irreconcilable differences without a sworn agreement of the parties settling all matters of custody and property with such agreement approved by the court. Tenn. Code Ann. § 36-4-103(b) (Supp. 1999). In addition, the code provides as follows:

(e) If there has been a contest or denial of the grounds of irreconcilable differences, no divorce shall be granted on the grounds of irreconcilable differences. However, a divorce may be granted on the grounds of irreconcilable differences where there has been a contest or denial, if a properly executed marital dissolution agreement is presented to the court.

Tenn Code Ann. § 36-4-103(e) (Supp. 1999).

In the case at bar, the trial court has refused to approve the MDA, and the record establishes no abuse of discretion in this refusal. Also, the "irreconcilable differences" grounds for divorce were strenuously contested. It is likewise clear that the two years continuous separation provision of section 36-4-101(15) is applicable only if there are no minor children of the parties.

Since no basis exists in this case for a divorce on irreconcilable differences, Mr. Earls is left with his assertion of inappropriate marital conduct. Section 36-4-101(11) of the Code provides for a divorce based upon finding of fault where "the husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as render cohabitation unsafe and improper which may also be referred to in pleadings as inappropriate marital conduct." In a divorce case based upon allegations of fault, the burden rests upon the plaintiff to establish grounds of divorce by a preponderance of the evidence. If the proof fails to satisfy the chancellor that plaintiff is entitled to a divorce, such finding is reviewable on appeal de novo with a presumption of correctness of the decree of the chancellor. *Greene v. Greene*, 48 Tenn. App. 636, 641, 349 S.W.2d 186, 189 (1960).

Tennessee has moved dramatically in recent years, both by legislative enactment and judicial pronouncement, away from fault-based grounds for divorce and ever closer to no-fault divorce. *See*

-4-

*Cary v. Cary*, 937 S.W.2d 777, 781 (Tenn. 1996). However, the General Assembly, which has primary responsibility for determining the public policy of Tennessee, has yet to adopt no-fault divorce except to the limited degree authorized in two situations: where there are irreconcilable differences accompanied by a complete marital dissolution agreement and, in the case of a marriage with no minor children, after two years of separation. In the absence of one of these grounds stipulated pursuant to section 36-4-129, proof of fault grounds is still required. Tenn. Code Ann. § 36-4-114 (1996); *see Warren v. Warren*, 731 S.W.2d 908 (Tenn. Ct. App. 1985).

The Supreme Court of Tennessee long ago recognized the inherent weakness of fault-based divorce laws in cases where inability to prove fault leads to the continuation of a marriage in name only. In 1933, speaking for the Supreme Court, Chief Justice Grafton Green observed:

> As pointed out by another court, we must take into consideration "the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried." *Burlage v. Burlage*, 65 Mich. 624, 32 N.W. 866, 867. Society is not interested in perpetuating a status out of which no good can come and from which harm may result.

*Lingner v. Lingner,* 165 Tenn. 525, 56 S.W.2d 749, 752 (1933). In *Lingner*, however, the wife had sued only for divorce from bed and board and not for absolute divorce, and the court in granting her an absolute divorce over her objections applied code section 8445, now Tennessee Code Annotated section 36-4-120(b). *Lingner* has repeatedly been followed in cases where a party has attempted to limit relief to divorce from bed and board and the court has determined that the marriage is a marriage in name only. *See, e.g., Turner v. Bell*, 198 Tenn. 232, 279 S.W.2d 71 (1955); *Herchenroeder v. Herchenroeder*, 28 Tenn. App. 696, 192 S.W.2d 847 (1945).

Prior to chapter 283 of the Public Acts of 1963, Tennessee Code Annotated section 36-802 provided grounds for divorce from bed and board on grounds of cruel and inhuman treatment, intolerable indignities to the person, and abandonment. Chapter 283 provided power to the court to grant an absolute divorce where a final decree of divorce from bed and board had been in effect for two years with no reconciliation between the parties. This brought on the *Abney* saga beginning with *Abney v. Abney*, 222 Tenn. 160, 433 S.W.2d 847 (1968). After Ms. Abney obtained a divorce from bed and board in 1964, her husband, Mr. Abney, filed a petition in 1967 under chapter 283 of the Public Acts of 1963, asking the court to grant an absolute divorce either to him or to Ms. Abney. Said the supreme court:

> We think the paramount intent of the legislature in enacting this 1963 amendment to this Code section can be found in statements made by Chief Justice Green in *Lingner v. Lingner*, 165 Tenn. 525, 56 S.W.2d 749 (1933). Chief Justice Green, after noting that a person living under a decree of limited divorce is in effect living in a world of enforced celibacy, neither married nor unmarried, said:
>
>> Society is not interested in perpetuating a status out of which no good can come and from which harm may result. 165 Tenn. at 534, 56

-5-

S.W.2d at 754.

The intent of this amendment is to empower the courts to grant relief to persons finding themselves in such a situation.

*Abney*, 433 S.W.2d at 849.

Thereafter, in construing the language of the 1963 amendment, the Supreme Court in *Abney* reiterated *Lingner* but held:

Under the first ground of the demurrer the wife, in effect, says she does not seek an absolute divorce. In a divorce action the desires of the parties, particularly the party without fault, are given consideration but such does not control the action of the court. *Lingner v. Lingner*, supra. The first ground of the demurrer is without merit.

The husband sought relief either by the court granting to him or to his wife an absolute divorce. This petition was filed as a result of two years expiring since the decree awarding the wife separate maintenance. Under this petition the court has no authority to award the husband a divorce. The decree awarding the wife separate maintenance can be changed to award the wife an absolute divorce. The demurrer insofar as it applies to the husband seeking a divorce is sustained. Otherwise, the judgment of the court is reversed and the cause remanded for further proceedings.

*Abney*, 433 S.W.2d at 850.

The *Abney* battle over the 1963 amendment to Tennessee Code Annotated section 36-802 continued, and after again being rebuffed in the trial court, James Harold Abney appealed to this court which held in part as follows:

The 1963 amendment to § 36-802 T.C.A. did create additional circumstances under which the courts in their discretion were empowered to grant absolute divorces, but when granted under the provisions of this amendment, such divorces must be granted to the same person who obtained the original relief. *Abney v. Abney*, Tenn., 433 S.W.2d 847 (1968). . . .
. . .
Defendant protests bitterly that he is immured in the thralldom of enforced celibacy as deplored in *Lingner v. Lingner*, 165 Tenn. 525, 56 S.W.2d 749 (1932). This may be true, but, according to the testimony of the parties, it is defendant who is unwilling to cohabit with his wife, rather than the reverse. In this respect, celibacy of defendant is voluntary, rather than enforced.
. . .

The 1963 amendment to § 36-802, T.C.A. was largely aimed at those

situations wherein the so-called "guilty party" was willing to be reconciled and the so-called "innocent party" declined to become reconciled. Although not limited to such situations, it is extremely doubtful that the legislature intended to provide a means whereby a wrongdoer might force an unwanted divorce upon the innocent spouse by persistence in wrong-doing and refusal to reconcile for an additional two years. The policy of society and the State is to encourage preservation of marriage by reconciliation rather than to reward a refusal to be reconciled.

. . .

This Court is not oblivious to the hardships imposed by necessity upon estranged spouses. The peculiar situation of these parties makes their hardships more onerous than usual. The courts do not have unlimited power to relieve hardship and license pleasure, at the expense of undue hardship to innocent parties.

*Abney v. Abney*, 61 Tenn. App. 531, 456 S.W.2d 364, 368-69 (1970).

In 1988, a divided Tennessee Supreme Court came to grips with the conflict between fault statutes and the practical appeal of no-fault principles. In *Thomasson v. Thomasson*, 755 S.W.2d 779 (Tenn. 1988), both parties sued for divorce and both parties proved adequate fault. Following existing Tennessee case law, the majority of the court held:

The result is that Husband has proven a cause of action for divorce to which Wife is without a valid defense and Wife has proven a cause of action for divorce to which Husband is without a valid defense. In such circumstances the Court cannot award a divorce to either party and their respective suits must be dismissed. *See Brewies v. Brewies*, 27 Tenn. App. 68, 178 S.W.2d 84 (1944) and *Akins v. Akins*, *supra.*

*Thomasson*, 755 S.W.2d at 787.

Chief Justice Harbison, concurring with Justices Fones and Cooper in sustaining the trial court action dismissing both cases, first noted that the result suggested in Justice Drowota's dissent was appealing. Next, Justice Harbison observed that the statutes dealing with grounds for divorce had not been amended since being construed in *Brewies v. Brewies*, 178 S.W.2d 84 (Tenn. Ct. App. 1943), "[e]xcept for the adding of some grounds not based upon fault, such as irreconcilable differences and separation for three consecutive years." *Thomasson*, 775 S.W.2d at 788 (Harbison, J., concurring). Justice Harbison then succinctly stated the case for the majority:

The General Assembly is presumed to know the construction and interpretation of statutes by the courts. *See Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn. 1977). The General Assembly has met repeatedly since the *Brewies* case was decided, and it has not changed the basic provisions of the fault-based statutes.

Rightly or wrongly, the divorce code, except for the statutes based on

irreconcilable differences or absence for three years, consists of grounds comprising fault or misconduct. The divorce proceeding, again rightly or wrongly, is basically adversarial, being instituted by a sworn petition in which collusion must be denied. T.C.A. § 36-4-107. A jury trial may be demanded. T.C.A. § 36-4-113. Proof is required even when the allegations of the complaint are confessed, except for cases of irreconcilable differences. T.C.A. § 36-4-114. That section provides:

> If the defendant admits the facts charged in the bill or petition and relied upon for the ground for a divorce, or the bill be taken for confessed, the court shall, nevertheless, before decreeing a divorce, except a divorce on the ground of irreconcilable differences, hear proof of the facts alleged as aforesaid, and either dismiss the bill or petition or grant a divorce, as the justice of the case may require.

T.C.A. § 36-4-119 provides:

> If, upon hearing the cause, the court is satisfied that the complainant is entitled to relief, it may be granted either by pronouncing the marriage void from the beginning, or by dissolving it forever and freeing each party from the obligations thereof, or by a separation for a limited time.

Obviously, there could be no valid distinction between a "complainant" and a counter-claimant. If both are entitled to a divorce under these fault-based statutes then, in my opinion, the law has been and remains that neither is entitled to obtain a divorce.

This result may not be socially appealing, as suggested by the dissent. Nevertheless, in my opinion, well-settled construction of established statutes should not be changed simply because of that fact.

If the General Assembly for the state wishes to adopt the principle of dual divorce, it may do so by amending existing statutes. Unless and until it does so, however, in my opinion the established interpretation of the statutes should be retained.

*Thomasson*, 755 S.W.2d at 788-89 (Harbison, J., concurring).

Justice Drowota, with whom Justice O'Brien concurred, dissented pointing out that statutory changes in recent years pointed toward a change in public policy, diminishing the requirement of fault and trending toward no-fault.

> The revisions of our divorce and alimony statutes have in my view worked a change in the public policy of this state regarding divorce. Divorce can no longer

be understood solely as a remedy for the innocent spouse against the guilty spouse. This is not to say that fault is irrelevant. Fault-based grounds, such as the ones at issue in the instant case, obviously remain, as well as fault-based defenses. *See, e.g.*, T.C.A. §§ 36-4-112, 36-4-120. And fault is one factor among many in determining alimony.

. . .

This Court has already recognized the public policy at issue in this case.

There is, however, another public policy consideration that is applicable in the aftermath of a hopelessly broken marriage, that was enunciated by this Court many years ago, a policy that also undergirds the legislative enactment allowing divorce on the ground of irreconcilable differences. In *Farrar v. Farrar*, 553 S.W.2d 741 (Tenn. 1977), Mr. Justice Henry, writing for the Court said: "We fully recognize that considerations of public policy demand that the institution of marriage be sheltered and safeguarded. But there is an obverse side to the coin of public policy and consideration must be given to the fact that society is ill served by a legally commanded continuance of a marriage which exists in name only. We quote from the opinion of the late Chief Justice Grafton Green, in *Lingner v. Lingner*, 165 Tenn. 525, 534, 56 S.W.2d 749, 752 (1933): As pointed out by another court, we must take into consideration 'the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried.' (Citation omitted.) Society is not interested in perpetuating a status out of which no good can come and from which harm may result." 553 S.W.2d at 744, 745.

*Thomasson,* 755 S.W.2d at 792 (Drowota, J., dissenting).

It must be noted that in *Thomasson,* both parties sued for divorce and both parties adequately proved fault grounds for divorce while in the present case Mr. Earls only has sued for divorce and Ms. Earls, as to the divorce itself, seeks only a dismissal of Mr. Earls' complaint.

If *Thomasson* was an open invitation to the General Assembly, it produced only a modest response. Chapter 393 of the Acts of 1989 reduced the continuous separation time of Tennessee Code Annotated section 36-4-101(12) (now 15) from three years to two years. Chapter 489 of the Acts of 1989 and chapter 234 of the Acts of 1991 made procedural amendments to Tennessee Code Annotated section 36-4-103, relative to irreconcilable differences without altering the consent requirements for a divorce on such grounds. Chapter 543 of the Acts of 1989, (now Tennessee Code Annotated section 36-4-129, provided that the parties may stipulate grounds for divorce but is ineffective in the absence of such stipulation.

The experience of the State of Illinois is instructive in this case. Prior to the Illinois Marriage and Dissolution of Marriage Act of 1984, Illinois was a fault state. In *Sharpe v. Sharpe*, 292 N.E.2d 566 (Ill. App. 1973), the plaintiff sought a divorce for mental cruelty with the trial court holding that she had failed to carry her burden of proof. The judgment of the trial court was affirmed on appeal with the court making the following observation: "While it is true that this marriage has doubtless

reached the point where reconciliation is not possible, it is not the function of the courts to determine that parties to an impossible marriage situation are entitled to a divorce merely on the grounds that they cannot live together. It is the function of the legislative branch of the government of this state to determine whether or not divorces should be granted regardless of fault." *Id*. at 568.

Some years later in the case of *In re Marriage of Bates*, 490 N.E.2d 1014 (Ill. App. 1986), suit was filed in 1980 on grounds of mental cruelty with the trial court holding that plaintiff had failed to carry his burden of proof. The court granted the defendant's cross-petition for legal separation by decree entered June 1, 1984. While the case was on appeal, the General Assembly of Illinois passed the Illinois Marriage and Dissolution of Marriage Act providing for no-fault divorce. The Court of Appeals of Illinois applied the new act, declared the marriage of the parties irretrievably broken, and granted the husband a divorce on no-fault grounds.

In *In re Marriage of Smoller*, 578 N.E.2d 256 (Ill. App. 1991), the husband filed suit for divorce on irreconcilable differences among other grounds. The evidence disclosed that he had found another woman and did not wish to continue to be married to the wife. The trial judge denied the divorce, and the husband appealed. In reversing the trial court under no-fault, the court held:

> We note that, in cases decided prior to codification of section 401(a)(2), Illinois courts recognized that dissolutions should not be lightly granted under the Act in furtherance of an expressed public policy to preserve marriages. Adoption, in 1984, of section 401(a)(2) and its provision for dissolution based on irreconcilable differences, however, indicates our General Assembly recognized the policy no longer served when the State's interest in preserving a marriage is not also shared by the parties themselves. It seems clear that included as a legitimate object of a marriage is the fulfillment of each party's desire to continue in that legally sanctioned union, evidenced by the absence of differences so serious as to undermine the marriage relationship. The critical inquiry here, given satisfaction of the other requirements of section 401(a)(2), is whether that section permits a finding of irreconcilable differences where only one of the parties desires to maintain the union.

> We must conclude that it does. Where evidence shows one spouse clearly desires to no longer continue to be married to the other, an irreconcilable difference necessarily arises between them causing an irretrievable breakdown of the marriage. Indeed, if a greater difference can exist within the context of a marriage relationship than one between spouses where one refuses to continue as the spouse of the other, we are at pains to conceive of it. As observed by Justice Robertson of the Supreme Court of Mississippi:

>> "That one spouse out of blindness, obstinance or nostalgia refuses to recognize it hardly means that a marriage may not in fact * * * be irretrievably broken. As a matter of common sense, there can be irreconcilable differences within a marriage even when one spouse refuses to accept or recognize that fact."

> (*Gallaspy v. Gallaspy* (1984), 459 So.2d 283, 287 (Robertson, J., dissenting).  We believe a contrary interpretation of section 401(a)(2) would be inconsistent with the intent to provide a no-fault provision for the dissolution of marriages.  We therefore determine that evidence may establish, as in other cases where irreconcilable differences are alleged, the existence of such a basis to support the dissolution of a marriage under section 401(a)(2) where even one spouse does not desire to continue to be married to the other.  See *Gallaspy v. Gallaspy* (1984), 459 So.2d 283, 287 (Robertson, J., dissenting).

*Smoller*, 578 N.E.2d at 259 (citations omitted).

In *Cary v. Cary*, 937 S.W.2d 777 (Tenn. 1996), the Supreme Court of Tennessee acknowledged and applauded the nation-wide trend toward no-fault divorce in a case involving the validity of an antenuptial agreement which waived alimony.  The court made the following statement:

> In Tennessee, as in most every other state, there has been a shift in public policy by the General Assembly regarding dissolution of marriage.  A divorce may be obtained on the grounds of irreconcilable differences, without a showing of fault on the part of either parties.  *See* Tenn. Code Ann. § 36-4-101(11) (1991 Repl.).  Accordingly, the potential for abuse which the *Crouch* court predicted might flow from enforcement of provisions waiving or limiting alimony, is not present.  A spouse who desires a divorce may obtain it without a showing of fault.
> . . .
> In Tennessee, the legislative shift in public policy regarding dissolution of marriage reflected by our no fault divorce statutes, the legislative changes in alimony placing men and women in equal bargaining positions, the Legislature's specific approval of antenuptial agreements regarding property, and contemporary society's changed view of the roles of men and women all dictate an abandonment of the old court-made common-law rule prohibiting antenuptial provisions which limit or waive alimony for reasons of public policy.

*Cary*, 937 S.W.2d at 781.

The Tennessee Supreme Court in *Cary* comes about as close to sanctioning pure no-fault divorce as a court can do.  However, it does not purport to remove the statutorily mandated conditions on no-fault divorce in Tennessee.  Irreconcilable differences, as a grounds for divorce in Tennessee, still requires a signed marital dissolution agreement, and a two year separation, as a grounds for divorce, still applies only to marriages where no minor children are involved.

Given the state of the law in Tennessee, it is incumbent upon Mr. Earls in the case at bar to establish that Ms. Earls is at fault before he is entitled to a divorce on grounds of inappropriate marital conduct.  The trial court held that he had failed to carry his burden of proof, and in my opinion, the evidence in this record certainly does not preponderate against the factual findings of

the chancellor in this regard. It is disingenuous, at best, to find Ms. Earls at fault because she suffered quadriplegia caused by events beyond her control and thereafter could not display superhuman qualities. The action of the trial court in refusing to grant a divorce to Mr. Earls should be affirmed.


V.     Legal Separation

In her original cross-claim, Ms. Earls sought neither divorce nor divorce from bed and board.[1] Her prayers for relief were limited to having the July 16, 1998 MDA declared null and void, restraining Mr. Earls from dissipating marital assets, enjoining Mr. Earls to keep Ms. Earls insured under his health insurance with his employer and having the court award temporary support and maintenance, alimony in futuro, attorney fees and general relief. After the amended complaint of Mr. Earls filed December 14, 1998 asking divorce upon grounds of inappropriate marital conduct, Ms. Earls sought only to have the complaint dismissed and her attorney fees and expenses paid.

On March 10, 1999, the day following the first day of the trial, Ms. Earls filed a document entitled "Wife's Prayer for Relief." These prayers for relief sought in part, alimony in futuro, continued medical insurance coverage, a property division and attorney fees. Such prayers for relief by Ms. Earls are consistent with the separate maintenance provisions of the trial court judgment. This case is much akin to *Stephenson v. Stephenson*, 201 Tenn. 253, 298 S.W.2d 717 (1957), where the husband sought divorce and was unable to prove grounds for divorce. In distinguishing *Lingner v. Lingner*, 165 Tenn. 525, 56 S.W.2d 749 (1933), the Supreme Court in *Stephenson* observed:

> But a different situation presents itself here. The complainant, in her bill did not pray for a divorce, either from bed and board or from the bonds of matrimony, and did not plead any one of the statutory grounds of divorce; but on the contrary averred that she was not seeking a dissolution of the marriage ties, but an affirmation of them; and her prayer was for separate support and maintenance.

*Stephenson*, 298 S.W.2d at 719. The court held that a divorce could not be granted without grounds simply because there was no hope of reconciliation. *Id*. The court upheld separate maintenance for the wife holding that such obligation of the husband was not dependant upon divorce statutes, but that the chancery court had inherent power independent of statute to grant such relief. *Id*. at 719-20.

This court in *Clabough v. Clabough*, No. 01A01-9605-CV-00200, 1996 WL 668345 (Tenn. Ct. App. 1996), faced a similar situation. In that case, the husband sued the wife for divorce charging inappropriate marital conduct. The wife answered with a general denial but request for support, maintenance and custody of the minor children along with general relief. The trial court

---

[1]Chapter 1059 of the Public Acts of 1998 which, among other things, amended T.C.A. § 36-4-102 to provide for legal separation rather than divorce from bed and board did not become effective until January 1, 1999.

held that the allegations of the complaint were not sustained by the evidence but that the wife was entitled to separate maintenance, support and a division of assets under the terms of Tennessee Code Annotated sections 36-4-121 and 36-5-101. This court observed that Mrs. Clabough's answer did not allege any facts relating to separate maintenance and support but that her answer did contain a prayer for such relief. In upholding separate maintenance, this court held:

> The case of *Stephenson v. Stephenson*, 201 Tenn. 253, 298 S.W.2d 717 (1957) involved almost identical facts. In that case, the wife filed a cross bill for divorce but later amended the answer to delete the grounds alleged and the prayer for divorce. Thus, the case went to trial on the original bill and an answer containing a prayer for separate maintenance. When the court found that the husband failed to prove his grounds for divorce, the court entered a decree of separate maintenance. Although the propriety of that action was not involved in the subsequent appeal, the Supreme Court stated that the courts have the inherent power to award separate support and maintenance. The power does not rest on the divorce statutes but is founded on the obligation to support the wife.

> In *Roberts v. Roberts*, 22 Tenn. App. 651, 125 S.W.2d 199 (1939), this court said, "The right of a wife to separate maintenance is founded on the duty of the husband arising out of the marital relationship to support the wife. She may have it awarded in a divorce proceeding under the prayer for general relief even though a divorce be denied her." 22 Tenn. App. at 654, 125 S.W.2d at 201.

> We hold that the trial court's action was proper under the pleadings.

*Clabough*, 1996 WL 668345 at * 2.

In *Flanagan v. Flanagan*, No. 03A01-9612-GS-00404, 1997 WL 360566 (Tenn. Ct. App. 1997), the wife sought divorce on inappropriate marital conduct with the husband answering that the wife was not entitled to a divorce and filing no counter-claim. Recognizing the *Lingner-Farrar* admonition, the Court of Appeals nevertheless held that the evidence preponderated against the judgment of the trial court and that the wife was not entitled to a divorce on inappropriate marital conduct. The court stated:

> Taking her testimony at face value, it simply does not make out the grounds set forth in T.C.A. § 36-4-102(a)(1). As the Supreme Court said in the *Perrin* case, we "cannot by judicial fiat add an additional ground for divorce." 299 S.W.2d at 24. To approve an absolute divorce based on this testimony would amount to judicial legislation. That is not our role. If this state is to recognize the type of conduct shown in this case as a ground for divorce in a contested setting, it must be accomplished by legislative enactment.

*Flanagan*, 1997 WL 360566 at * 2. Thus did the *Flanagan* court face the same problem we face in

-13-

the instant case with the husband and the wife.  The *Flanagan* court decreed separate maintenance, holding:

> We vacate the trial court's grant of an absolute divorce.  We recognize that Husband has testified that he does not want Wife to return to him.  It is likewise clear that Wife has no intention of resuming a marital relationship with Husband.  Pursuant to our authority under Rule 36. T.R.A.P., we modify the trial court's judgment to provide that the parties will reside separate and apart, i.e., separate maintenance.  A trial court "has the inherent power, independent of statute, to grant the relief [of separate maintenance] in proper cases, where a divorce is not sought or in which the complainant is not entitled to a divorce." *Stephenson v. Stephenson*, 201 Tenn. 253, 298 S.W.2d 717, 719-20 (Tenn. 1957).  At an appropriate time, Wife is at liberty to seek an absolute divorce pursuant to applicable statutory authority.

*Flanagan*, 1997 WL 360566 at * 3.

Following *Stephenson, Clabough* and *Flanagan* along with Tennessee Code Annotated section 36-4-101(a)(1), and taking into consideration the changes effected by chapter 1059 of the Public Acts of 1998, particularly as is now codified at Tennessee Code Annotated section 36-4-102(c)[2], I would decree separate maintenance and then consider the custody, alimony and attorney fees issues inherent in a decree of separate maintenance.

VI.    Custody

In her answer to the original complaint, Ms. Earls did not seek custody of the eight year old son of the parties.  Ms. Earls did not seek custody of the minor child in her answer to the amended complaint.  Rather, she made the following assertion: "1.  Wife admits the parties have one minor child, Sage.  Based upon the stipulation entered into by the parties regarding custody, there is no further need to respond to the averment."  Ms. Earls did not seek custody in her pleading styled "Wife's Prayer for Relief".  Rather, she sought to preserve for herself a comparative fitness analysis in the future so that if her health improved, it could be considered as a material change in circumstances.

At the very outset of the trial, before any evidence was offered, the following discussion between the court and the parties' attorneys occurred:

---

[2]"Legal separation shall not affect the bonds of matrimony but shall permit the parties to cease matrimonial cohabitation.  The court may provide for matters such as child custody, visitation, support and property issues during legal separation upon motion by either party or by agreement of the parties."  Tenn. Code Ann. § 36-4-102 (c) (Supp. 1999).

MR. DAVIES: Let me go ahead and address the issue of custody, when I took Mr. Earls' deposition on December the 11th, 1998, we entered into a stipulation on – on the custody, and I think it would be best for me just to read that into the record. And what my proposal does is simply track what that stipulation was.

This is me speaking: "While we're on the record, what I'd like to do is just confirm what the parties wanted to do in terms of custody of Sage. And I'll do my best to state that. If I don't do it correctly, let me know.

We have agreed that the custody of Sage should be joint custody in both parties; that primary physical care of Sage should be with Mr. Earls, and that we will work out our visitation.

And Ms. Ryan said: "Yes."

And then I went on to say: "The other part of the stipulation is that because Ms. Earls has the physical disability, in the event she is able to rehabilitate herself to the point that she physically can take care of Sage, she would have the opportunity to petition the Court to take another look at the custody situation and have a comparative fitness analysis that – that one would not ordinarily have –"

And Ms. Ryan said, "Right."

And I finished my sentence: "– in this set of circumstances."

So what we're basically saying is, in the event she is able to rehabilitate herself, that is a change of circumstances that allows her to come back. And – and that – I think we all – and that was the stipulation.

Is there any disagreement with that?

THE COURT: Is there any disagreement in that regard?

MR. RYAN: Well, Mr. – Mr. Earls, as far as working out some around the details in – in making a matter of semantics based on – I don't know whatever visitation comes out, but he had indicated that he wanted custody and then have – again, have that issue, the same thing, only not calling it joint custody, Your Honor. That's what he has indicated.

THE COURT: Well, let's throw out just an alternative idea that they may not have thought about. What if we do order joint custody, but just designate him as the residential parent? That way you don't have to worry about this standard, something comes up and she improves her situation, then you just start from scratch. And don't – don't call it physical custodian and open up that can of worms. Just say joint custody. Hopefully, these two folks will be able to raise this child jointly if nothing else changes. And if – he would be the residential parent. And then we can talk about visitation if you want to, or if you all want to carve out the times, we can do that. How does that sound to you, Mr. Davies?

MR. DAVIES: That's fine. That's – I think that's the

-15-

stipulation calling it another thing. That's fine.

MS. RYAN: That's fine.

THE COURT: That may help – that may help with later burdens in the future. That makes it real clear. And – and when the child grows up, the child looks back on this situation, if they never come back into Court, that the child can applaud the parents for trying to be as fair and equitable under the circumstances by making this real clear by that.

MS. RYAN: I – I don't think we have any problem with that at all, Your Honor.

THE COURT: All right. Ms. Earls, how does that sound to you?

MS. EARLS: Yes.

*THE COURT: Okay. Then that would be the decree of the court with respect to the custody issue.* (emphasis added).

In the wake of the preceding conversation, neither party introduced any evidence relative to custody since, under the pleadings and the stipulation agreed to by the trial judge, there was no triable issue as to custody. Two days of trial on oral testimony followed. At the conclusion of the trial, the trial court, without notice, without motion written or oral, and without any party challenging the custody agreement approved by the court before the trial ever started, sua sponte ruled:

Now this is the tough part. Because this child clearly has been suffering as a result of this litigation, and I have looked at the factors set forth in the custody statute, I've heard the proof, and I've considered what the parties have had to say about Sage, but I'm going to make a ruling that I think is mandated by the statute, which is 36-6-106, because any time a request for custody determination is placed before a judge having custody jurisdiction adjudication, the statute says the court shall consider ten factors and make a custody determination. And I've done that. I've made a list of these factors and I have a check list and tried to weigh these factors. And clearly the factor that relates to one parent's physical ability to provide for the physical needs of a child militates greatly in Mr. Earls' favor.

However, if you look at all these factors that's not the one factor I'm supposed to follow. I'm supposed to look at all the factors. And having considered the credibility of the witnesses and all of the evidence, I can not conclude but one thing in that custody of Sage shall be awarded solely to Ms. Earls. And that's what I'm going to do today.

-16-

Now, I want to say this about that. I don't think I need to go down each factor. I've weighed every one, all ten. I've got a list here. If someone later wants me to make specific findings in that regard I'll entertain that. But suffice it to say that both of [the] parties need help with this child. That's what's gotten Mr. Earls in trouble with Ms. Moore. He's not there at night on many nights. And as far as this Court is concerned, from a support standpoint, the support that Ms. Earls has is vastly superior to the support that Mr. Earls has. Since Mr. Earls' support has developed into an inappropriate romantic relationship, it militates even more in favor because rightly or wrongly the Tennessee Supreme Court said in *Suttles v. Suttles* that when the Courts determine issues of custody and visitation, they're also not to determine – to look at evidence that may jeopardize a child in the physical sense but the courts are to look at definite evidence of whether a child is jeopardized in a moral sense. As long as these people remain married it morally jeopardizes this child to be exposed to Ms. Moore overnight with Mr. Earls in what is clearly, at least on the surface, perceived at this point in time to be a romantic situation. That's not good for Sage to see that.

Now if you all were divorced and you're not divorced, this issue would probably be mostly moot but it's not. Therefore I'm awarding Ms. Earls custody.

Child custody decisions must be based upon a "comparative fitness" analysis by the trial court. *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). In this comparative fitness analysis, the court must weigh the factors enumerated in Tennessee Code Annotated section 36-6-106. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). Once this comparative fitness analysis is made and custody is awarded by the trial court, such decision is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). When the issue before the court is whether to modify a prior custody order, it is not necessary to repeat the comparative fitness analysis but instead the burden rests upon the non-custodial parent to prove a material change in circumstances compelling enough to warrant a change of custody. *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991).

What the parties and the trial court apparently attempted to do at the outset of the trial was to stipulate a custody arrangement whereby Mr. Earls would retain primary physical custody of the child but Ms. Earls would be relieved of the obligation in a future petition for change of custody to prove a material change of circumstance. Under the stipulation, the court would instead, on the filing of such future petition, go directly to a comparative fitness analysis. It is in large part a stipulation of law rather than a stipulation of fact. It purports to relieve Ms. Earls of her burden of proof to establish a change of circumstances and further to relieve the trial court of its obligation of adjudicating the question of whether or not a change of circumstances has been established. The validity of such a stipulation is questionable, *Holms v. Johnston*, 59 Tenn. 155 (Tenn. 1873), but under the circumstances of this case the validity of the stipulation is a secondary consideration. Both parties and the court agreed to the stipulation pre-trial, and on the strength of such an agreement,

neither party offered evidence on the custody issue. The trial court at the conclusion of the trial disregarded the stipulation, made a comparative fitness analysis using the factors in Tennessee Code Annotated section 36-6-106 and awarded custody to Ms. Earls without the custody issue ever being tried. All parties agree on appeal that this action is erroneous and must be reversed.

I disagree with the majority opinion finding that, since Ms. Earls has never sought custody in her pleadings, the initial primary physical custody award to Mr. Earls should remain in effect and Ms. Earls has the burden of establishing a change of circumstances. I would hold that unless Ms. Earls amends her pleadings under Tennessee Rules of Civil Procedure 15 in order to seek a change of this custody arrangement, there is no issue to be tried and primary physical custody should remain with Mr. Earls. I would further find that if Ms. Earls amends her pleadings to seek custody, then the entire custody issue should be tried on the merits including an initial comparative fitness analysis, since the custody issue has never been tried at all and since Ms. Earls was entitled to rely on the court approved stipulation the same as Mr. Earls was.

## VII. Spousal Support

As the majority holds, Ms. Earls has a monthly government disability check in the amount of $648. Mr. Earls' net monthly income is approximately $1,640. As long as Mr. Earls retains custody of Sage, he receives monthly SSI payments of $323 for the child. Since the majority holds that Mr. Earls retains custody pending proof of a change of circumstances, I concur in the holding that Mr. Earls should continue to receive these SSI payments. I also concur in the spousal support provisions of the majority opinion, except for the holding that "neither the amount nor duration of this support shall be modified or extended." In my view, this matter remains subject to trial court review through March 31, 2006.

## VIII. The Injunction as to Laura Moore

While Mr. Earls' downplaying of the extent of his personal relationship with Laura Moore is suspect under the proof in this case, the reaction of the trial court is nothing short of astounding. Specifically, the court held:

> Mr. Earls will be enjoined and restrained from bringing this child around Lorie Moore or Laura Moore and/or having Laura Moore at your home while you have the child during visitation. This may seem harsh to you Mr. Earls, but it's as far as I'm concerned in the eyes of the Court based upon the evidence you're still married to Ms. Earls and until an appellate court may tell me otherwise, and so until then not only are those restraining orders going down, but I'm going to permanently enjoin and restrain you from coming around Laura Moore, period. That if she comes around you you can't stop that, but you coming around her. That may seem harsh but that's to promote and protect the marriage relationship which exists and will exist in this case until I'm reversed or something new comes before the Court.

-18-

It is not surprising that no party on this appeal attempts to defend this action of the trial court. Neither the trial court nor any other court has the power to command a reconciliation between Mr. Earls and Ms. Earls here. Neither the trial court nor any other court has the power to command Mr. Earls to cease and desist whatever relationship is mutually acceptable to himself and Laura Moore. The presence of Laura Moore in this case has no significance at all between the parties except to possibly provide Ms. Earls with grounds for a divorce which she does not seek. The only power vested in the trial court or this court concerning Laura Moore is the effect that the relationship between Mr. Earls and Laura Moore may have in the custody adjudication as to Sage which has not yet been tried. This injunction issued by the trial court in this respect was stayed by previous order of this court and I concur with the majority that it should now in all respects, be dissolved.

IX.    Conclusion

Accordingly, I dissent from the court's decision granting a divorce finding instead that the action of the trial court in dismissing the complaint for divorce filed by Mr. Earls should be affirmed. I would also find that the action of the trial court in ordering separate maintenance, payable by Mr. Earls to Ms. Earls, should be affirmed for reasons stated herein and under the authority of *Stephenson, Roberts, Clabough,* and *Flanagan*. Finally, it is my opinion that the action of the trial court in granting custody of the minor child Sage to Ms. Earls, having previously been stayed by order of this court, should now be reversed and remanded for further proceedings on the merits if Ms. Earls would choose to seek, by proper pleadings, a change in the custody arrangements previously agreed to by the parties and the trial court. The injunction prohibiting Mr. Earls from associating with Laura Moore has been previously stayed by this court, and I concur with the majority that it should now be in all respects dissolved.

The judgment of the majority is more appealing in effecting closure of the relationship between this unfortunate young husband and wife. Like Chief Justice Harbison in *Thomasson* and like Judge Susano in *Flanagan*, however, I conclude that the existing divorce statutes in Tennessee provide no basis for the grant of a divorce in this case. Until Tennessee chooses to follow Illinois or other states enacting a pure no-fault divorce statute, Tennessee courts have no power to judicially legislate such a divorce. The majority avoids this truism by finding "fault" on the part of Ms. Earls. Since I am unable to find any evidence in this record to justify such a finding, I respectfully and reluctantly dissent.